[Civ. No. 15255.   First Dist., Div. One.   June 30, 1952.]

LARRY D. MACKAY et al., Respondents, v. TED H. WHITAKER et al., Appellants.

Robert H. Kroninger for Appellants.

Royal E. Handlos for Respondents.

PETERS, P. J.—This is a motion to dismiss an appeal on the grounds that the judgment has been satisfied, and that the appellants have voluntarily accepted its benefits to the detriment of respondents.

The Mackays brought this action against the Whitakers, the Emslies, James C. Philips and the Philips corporation for declaratory relief and to quiet title to a parcel of property on which the Emslies had been conducting a kennel. The kennel property was subject to a first deed of trust given by the Emslies to a loan company to secure a $10,000 note. The claim of the Mackays to the property grows out of the following circumstances: In 1948 the Mackays and the Emslies entered into an informal joint adventure for the purchase of dogs for show purposes, the Mackays advancing most of the money. In November of 1949 the parties entered into a written agreement setting forth their respective rights and obligations. This agreement, executed on November 25, 1949, provided that the Emslies should deed the property to the Whitakers, disinterested third parties, who should hold it as security for a third deed of trust given as security for a $10,000 two-year note executed by the Emslies and payable to the Mackays. A second deed of trust to the Philips corporation was authorized to secure certain advances that might be made. The agreement authorized the Emslies and the Whitakers to increase the loan company indebtedness, if necessary, to $12,500, and also provided that upon maturity of the Mackays' note a new installment note should be executed. The agreement then provided that in the event the Emslies defaulted in payments on the first deed of trust loan, or on their payments to the Mackays, the Mackays had the option, on the 61st day after such default, to purchase the property for the balance then owed to them, upon their assumption of the obligations of the first deed of trust.

The Mackays' note required the Emslies to make monthly payments of interest. No interest was paid, the Mackays elected to exercise their option, the Whitakers refused to convey, and this action was commenced in November of 1950.

The trial court rendered its judgment in favor of the Mackays. The judgment declares that the Mackays are the owners of the property subject to the first deed of trust (and a second to the Philips corporation to secure an obligation of $1.00), and that the Mackays are entitled to possession upon certain conditions, namely, that the Mackays open an escrow, deposit therein a cancellation of the Emslies' note to them, a release of the Whitakers, an assumption of the prior obligations, and sufficient money to reimburse the Whitakers and the Philips corporation for advances made by them in connection with a default under the first deed of trust. The

Whitakers were to execute a deed to the property naming the Mackays as grantees, and deposit it in escrow, to be delivered upon completion of the escrow, at which time the Emslies were to deliver possession to the Mackays, upon receiving a full release.

From this judgment all of the defendants appealed, although it is conceded that the Emslies are the only appellants beneficially interested. The notice of appeal was filed June 15, 1951, the transcripts on appeal were filed in January, 1952, and the appellants' opening brief was filed April 15, 1952. This motion to dismiss was filed by respondents on May 12, 1952. Affidavits have been filed by both parties, and supplemental affidavits have been filed by appellants.

It is the theory of respondents that they complied with all of the terms of the judgment, that appellants accepted the benefits of the judgment, and that for these reasons the appeal must be dismissed. The affidavits filed on behalf of the respondents aver that they opened the required escrow and deposited therein all of the required documents. Among other things, the respondents paid into escrow some $664.02 to reinstate the first deed of trust. It is then averred that the escrow was closed on June 18, 1951; that on the next day the escrow holder delivered to the appellants all of the deposited documents, including a release of all obligations under the $10,000 note, and a cancellation of the note; that nevertheless the Emslies refused to deliver possession of the premises; that respondents secured a writ of restitution and threatened the Emslies with contempt; that the Emslies delivered up possession on July 18, 1951.

Attached as an exhibit to this affidavit is a copy of a letter dated June 4, 1951, from Raymond Ferrario, then attorney for appellants, addressed to the title company enclosing a deed from the Whitakers to the Mackays, and informing the title company that such deed should be held until the title company received a full release of the Whitakers and of Philips, evidence that taxes and payments on the first deed of trust had been made, and a full release by the Mackays of the superior court action here involved. The Emslies are not mentioned by name in that letter. It also appears that under date of June 19, 1951, the title company informed Ferrario that the escrow had been closed and that the Whitakers' deed to the Mackays had been recorded. Enclosed with this letter was a cancellation of the Emslies' note, a general release of all involved, including the Emslies, and a

waiver of the deed of trust executed by the loan association.

The Emslies filed opposing affidavits. They aver that they did not authorize their then attorney Ferrario to write the letter of June 4, 1951, demanding the cancellation of the note and the release. They also aver that they have not accepted any benefits of the judgment nor voluntarily performed any of the burdens, and that they surrendered possession of the property by reason of the threat of the contempt proceeding. The Whitakers aver that they deposited the deed in order to relieve themselves of liability, inasmuch as they have no interest in the litigation.

Attorney Ferrario avers that at the time of the rendition of the judgment, and numerous times thereafter, he informed counsel for respondents that appellants intended to appeal; that in May and June of 1951 respondents made numerous demands upon appellants to perform, and finally instituted the restitution and contempt proceedings; that in June of 1951 he informed the Whitakers and Philips, who have no interest in the litigation, that if they desired to relieve themselves of liability under the judgment they should comply with its terms; that under such circumstances the Whitakers executed the deed and he sent the letter of June 4, 1951; that counsel for respondents, although he knew that appellants intended to perfect the appeal, at no time claimed that the transactions in June, 1951, constituted an acquiescence in the judgment until this motion to dismiss was filed.

In a supplementary affidavit the Emslies aver that they have not received the note, its cancellation, or the release, and that they did not know that they had been received by Ferrario until this motion to dismiss was filed. They further aver that, had they known of them, they would have rejected them. They offer, in the event that the judgment is reversed on appeal, whether for a new trial or otherwise, to "pay all such costs and execute any and all such instruments as the court shall deem necessary to the placing of the parties in the positions in which they found themselves at the commencement of this litigation, or which shall by the court be deemed necessary to the placing of the parties in any other position with respect to each other as may be considered by the court just and proper."

Attorney Ferrario also filed a supplementary affidavit in which he avers that he wrote the letter of June 4, 1951, solely on behalf of the Whitakers and Philips; that such letter did not have any reference to the Emslies; that the letter did

not demand a cancellation of the Emslies' note to the Mackays, or a release of the Emslies; that the letter was intended to and did refer solely to the demands of the Whitakers and of Philips; that the letter of the title company dated June 19, 1951, enclosing the various documents, did not come to his knowledge until after this motion was filed when it was discovered in his files; that until such discovery he had no knowledge that the documents in any way affected the Emslies; that the Emslies were never informed that he had received such documents and never had an opportunity to reject their tender; that none of the documents have been recorded or used in any way to realize any benefits therefrom; that the Emslies now reject the tender. The documents are attached to his affidavit for such disposition as the court may deem proper.

In ascertaining whether this appeal should or should not be dismissed it is important to note that appellants at all times have diligently prosecuted the appeal, and, obviously, at no time had an intent to abandon it. Moreover, although the respondents have known since the entry of the judgment in May of 1951, that appellants intended to appeal, and the escrow has been closed since June 18, 1951, they took no steps to seek a dismissal until May of 1952.

It is also important to note that appellants' compliance with the judgment by delivering up possession of the property and by the execution and delivery of the Whitakers' deed, in no way can operate to bar the appeal. The delivery of possession by the Emslies was made under the compulsion of the restitution and contempt proceedings. Compliance with the whole or part of a judgment under compulsion does not foreclose the right of appeal. It is equally clear that even a voluntary compliance by the appellants with the provisions of the judgment would not foreclose such right unless such compliance was pursuant to a compromise agreement not to prosecute the appeal. (*Reitano* v. *Yankwich*, 38 Cal.2d 1 [237 P.2d 6].) Therefore, even though the appellants may have complied with portions of the judgment, and even though such compliance was voluntary, such compliance cannot be used to preclude them from prosecuting this appeal.

Respondents place their reliance on the rule that the voluntary acceptance by the appellants of the whole or part of the benefits of a judgment or order will act as a bar to the prosecution of an appeal. (*Schubert* v. *Reich*, 36 Cal.2d 298 [223 P.2d 242]; *Giometti* v. *Etienne*, 5 Cal.2d 411 [55 P.2d 216]; *Guho* v. *City of San Diego*, 124 Cal.App. 680

[13 P.2d 387]; *Dickenson* v. *Kallusch*, 91 Cal.App. 141 [266 P. 816]; *Preluzsky* v. *Pacific Co-operative C. Co.*, 195 Cal. 290 [232 P. 970].) This rule has no application, however, where the benefits accepted are such that appellant is admittedly entitled to them, or where they would not be affected by the appeal. (*Stein* v. *Simpson*, 37 Cal.2d 79 [230 P.2d 816].)

■ Even where the respondent has tendered performance, and appellant or his counsel have retained but not used the benefits tendered, the appellant will not necessarily be barred from the right of appeal. (*Phillips* v. *Isham*, 105 Cal. App.2d 608 [233 P.2d 637].) ■ In that case the court stated, at page 611, that before an acceptance of benefits will preclude prosecution of the appeal "it must appear, upon clear and decisive grounds, that the acceptance or receipt therefor was understood or intended as constituting an acquiescence in the judgment or decree."

■ If these rules be kept in mind, and considering the strong public policy in favor of deciding cases on their merits (*People* v. *Becker*, 108 Cal.App.2d 764 [239 P.2d 898]), we do not think that there was such a voluntary acceptance of benefits of this judgment by appellants as precludes them from prosecuting this appeal. Even though Ferrario was attorney for all of the appellants, including the Emslies, and even though his actions in reference to the escrow are probably binding on all appellants, even though not specifically authorized, it is quite clear that he did not intend, by his letter of June 4, 1951, to ask for any benefits on·behalf of the Emslies. The letter, in fact, asks for no such benefits. It refers to the enclosed deed from the Whitakers to respondents, and authorizes the deed to be used upon securing a release of the Whitakers and Philips, and upon payment of taxes and overdue payments on the deed of trust. It is a conceded fact that the Whitakers and Philips have no interest in this litigation. The respondents had no desire to hold them liable for any derelictions of the Emslies. All of the steps set forth in the letter were reasonably calculated to accomplish the intent of everyone to relieve the Whitakers and Philips of liability. Respondents call attention to paragraph five of the letter asking for a full release by the Mackays from all liability arising out of the action now here on appeal. Although the language used in this paragraph is general, and certainly could be improved upon so far as clarity is concerned, it is reasonably capable of the interpretation, when it

is read after the preceding four paragraphs all referring to the Whitakers and Philips, that it was intended to apply only to them. For this reason Ferrario's letter should not be construed as a request for the benefits of the judgment on behalf of the Emslies.

But, say respondents, the escrow holder sent a cancellation of the Emslies' note and a release to Ferrario, and he kept the documents for about a year. This, they say, must be construed as an acceptance of the benefits of the judgment. But Ferrario avers that he did not know that he had received them, and that they were put in the files in the belief that they referred only to the Whitakers and Philips. This, it is averred, is what Ferrario intended to ask for by his letter, and that, apparently, is what he thought he had received. Neither Ferrario nor the Emslies had any actual knowledge that the documents had been tendered. As soon as they found out about them, the Emslies refused the tender. Under such circumstances it should not be held that such an ambiguous retention of the documents by Ferrario constituted an acceptance of benefits sufficient to preclude the prosecution of the appeal. (See *Phillips* v. *Isham,* 105 Cal.App.2d 608 [233 P.2d 637].)

Respondents claim that they have changed their position to their detriment in reliance on the apparent acceptance by paying up the default on the first deed of trust, and in assuming liabilty thereunder. These steps were all necessary if the Whitakers were to be released from liability, as respondents intended. There is no satisfactory proof that such steps would not have been taken to protect them alone.

In view of the offer made by appellants in their affidavit if the judgment is ultimately reversed, the respondents will be protected from loss.

The tendered documents are ordered restored to respondents, and the motion to dismiss is denied.

Bray, J., and Wood (Fred B.), J., concurred.