[Civ. No. 15952.   First Dist., Div. Two.   Sept. 13, 1954.]

HARMON M. WILLIAMS, Appellant, v. LEROY J. ELLIOTT et al., Respondents.

William G. Phoenix for Appellant.

Frank V. Kington for Respondents.

KAUFMAN, J.—This is an appeal by plaintiff from a judgment in favor of defendant in a suit brought to establish a mechanic's lien for unpaid balance of $557.54, and in favor of defendants on their cross-complaint seeking a refund of $250 paid plaintiff on the contract here involved.

Respondents, owners of a new house, made an agreement with plaintiff, a roofing contractor, to construct a tile roof on their house, and to supply the necessary labor and materials for $660. Respondents were to employ a helper to work under appellant's directions. The parties agreed that the type of tile would be "Perltex," a brand manufactured at San Jose, California. The price $660, written by appellant on the back of a business card was the only term of the contract that was in writing. The testimony is in conflict as to which party made the specification of Perltex tile. The payment of $250 by respondents was prior to the discovery that the roof leaked.

Appellant complains first of the finding that "It is untrue that plaintiff duly performed the terms of said agreement to be by him performed." The cross-complaint set out that plaintiff agreed to furnish a Perltex French tile roof "in accordance with specifications therefor as prescribed by the manufacturer of said Perltex Tile." Appellant contends that the evidence will only support a finding that those specifications were followed. The manufacturer of the tile, Paul Otis Nelson, testified that the roof was properly laid, and in a good and workmanlike manner. Burger Nelson, an in-

vestigator for the Contractor's State License Board, testified that his inspections revealed nothing wrong with the roof.

▊  Appellant contends that whether or not the plaintiff laid the tile in accordance with the manufacturer's specifications was a material issue on which a finding was necessary and that such a finding could have only been in the affirmative in view of the evidence herein. The testimony of the manufacturer that the roof as laid met the plans and specifications of a Perltex roof may not have been believed by the trial judge. Another tile manufacturer and roofing contractor, Powell, who testified for defendants, stated that Perltex was just a name, and that he manufactured the same thing; that he was familiar with the Dunlap which is the same thing, the only difference being the name. Powell testified further that he had tried to use the Perltex tile that had been taken from the roof constructed by plaintiff, but found it impossible to use it. The manufacturer of Perltex had demonstrated that the tiles interlocked. Powell testified that when the tiles taken from the roof were laid so that they would interlock, they would not form a straight line across the roof, and that it would be impossible to make a watertight roof because the tiles would ride over one another and the wind would blow right under it. The defendant Elliott stated that the tiles on the original roof were laid in straight lines and the grooves and tongues did not fit together, and when he fitted the tiles taken from the roof together with the tongues in the grooves, they would form a halfmoon rather than a straight line. · This testimony, together with that of the defendants to the effect that the roof leaked in four rooms of the house during the first rainy season, adequately supported the finding that the roof as constructed was of no value and that it had to be removed and a new roof constructed. The manufacturer of the Perltex tile did not elaborate on plans and specifications for this type of tile, but demonstrated how the tile interlocked. Defendants' witness Powell, who installed the second roof and who was familiar with the same type of tile, testified that these tiles if interlocked, could not be laid in straight rows across the roof. Defendant Elliott testified that the tile had been laid in straight lines on the first roof.

▊  The court could certainly infer that the tile was obviously defective and that construction of a roof in a workmanlike manner was impossible using this particular lot of tile. The judge viewed the roof and could see that the tile was sticking up all over the roof. The manufacturer Nelson said that

the tile was not supposed to lie flat and that the roof with the tiles sticking up was constructed in a good and workmanlike manner. The trial judge was capable of observing whether the tiles on the roof were interlocked in the manner that the manufacturer demonstrated that they were supposed to interlock. He was also capable of noting that the tiles exhibited later in court and taken from the roof, would not form straight lines when interlocked. Appellant argues that the testimony of the leaks by the owners of the home was untrustworthy. ■ But again, the question of credibility of the witnesses is for the trial court alone and cannot be re-examined here.

■ The rule, as stated by appellant, is correct that if there is a failure to find upon all material issues a judgment based on such findings should be reversed if the omitted findings might have the effect of controverting or destroying the effect of other findings. (*Peterson* v. *Murphy*, 59 Cal. App.2d 528, 532 [139 P.2d 49].) ■ It is also true that if findings are made upon issues which determine a cause, other issues become immaterial and a failure to find thereon does not constitute prejudicial error. (*Chamberlain* v. *Abeles*, 88 Cal.App.2d 291, 299 [198 P.2d 927].) ■ We find, however, that there is in effect a finding that the roof was not constructed in accordance with the specifications therefor as prescribed by the manufacturer of Perltex tile. The court has found that "the roof was laid in such manner *that the tiles thereof did not fit together*, but were loose and irregular in the manner of the laying thereof." The principle of the interlocking of the tile was demonstrated to the court by the manufacturer. Therefore a finding that the tiles did not fit together, although it is not in the exact language of the cross-complaint, is a negative finding on the allegation that the roof was not "in accordance with specifications therefor as prescribed by the manufacturer of said Perltex tile."

■ Appellant claims that he was prejudiced by the fact that a portion of the trial was held on September 14, 1950, in his absence. Counsel for plaintiff on that date presented an affidavit of plaintiff's physician dated September 13, 1950, stating that Mr. Williams was suffering from an ulcer of the duodenum and was in no condition to appear in court at that time. Defendants' counsel stated that he had told plaintiff's counsel on the previous day that he would be willing to have the court inspect the roof and then defer the rest of

the trial to a date more convenient to Mr. Williams, since it was imperative that the defective roof be removed and a new one installed before the rains set in. On September 14, 1950, defendants' counsel repeated the offer to have the trial go over, with the exception that an expert witness of defendants examine the roof with the trial judge. Counsel for plaintiff and defendants argued back and forth as to how much counsel for defendants knew about the fact that plaintiff was ill. The court then stated that he was going ahead with the trial or he would go out and look at the roof, as the court was 550 cases behind. Counsel for plaintiff objected to the introduction of any evidence in the absence of his client, but was overruled. The court adjourned to the defendants' premises, where defendant, Mrs. Elliott, testified that plaintiff had been parked in front of her house at a quarter to five on the previous afternoon. Counsel for plaintiff asked that her answer be stricken on the ground that it did not refute the fact of plaintiff's illness. The court said: "Well, he was here," and counsel for plaintiff said that he would stipulate that plaintiff had been on his feet in the last few days. The court denied the motion to strike. In view of these circumstances it cannot be said that the court abused its discretion in denying a continuance. The cases cited by appellant, *Pacific Gas & Elec. Co.* v. *Taylor,* 52 Cal.App. 307 [198 P. 651] and *Morehouse* v. *Morehouse,* 136 Cal. 332 [68 P. 976], wherein the court was held to have abused its discretion in denying continuances, are clearly distinguishable on the facts. In the Morehouse case there was a showing that the defendants' deposition could not be taken without serious injury to him, and that he could not be brought to the place of trial without great risk to his life. In *Pacific Gas & Elec. Co.* v. *Taylor,* it was shown that defendant was out of the state where he was detained by serious illness and that he was the only person familiar with the facts constituting the defense and who knew the whereabouts of the witnesses he desired called on his behalf. In the instant case the plaintiff was up and about, and his attorney evidently could confer with him, and apparently knew what witnesses could be called as he had one present at the September 14th hearing.

Appellant comments on the fact that prejudice resulted from the fact that he was not afforded an opportunity to cross-examine the witness Wofford who testified for defendants at the September 14 hearing. Counsel for plaintiff was not denied an opportunity to cross-examine Wofford at

that hearing, but he stated that he asked the privilege of reserving his cross-examination until such time as his client should be present and have had the opportunity to read the testimony presented up to that point. Counsel for defendants said he thought plaintiff's counsel should cross-examine on the present testimony. The court commented: "Why don't you finish with this fellow now?" It is difficult to tell whether this was addressed to both counsel or to just plaintiff's or defendants' counsel. Counsel for defendants immediately following this remark, proceeded with further direct examination of Wofford. When he finished, plaintiff's counsel renewed his objections to the entire procedure, and then asked to have an expert witness testify for plaintiff, whereupon Paul Otis Nelson, manufacturer of Perltex tile, was called. He testified at length and was cross-examined by defendants' counsel. When the trial was reopened on February 7, 1951, Mr. Phoenix had been substituted for Mr. Worthington, plaintiff's counsel at the hearing of September 14, 1950. Mr. Phoenix asked if he would have the opportunity to cross-examine the witnesses who testified at the earlier proceeding. Defendants' counsel stated that they had already been cross-examined by Mr. Worthington. The court also stated that they had been cross-examined. This was untrue. The court said to plaintiff's counsel "You have the record, haven't you?" Then the following colloquy occurred:

"The Court: Then go on from there. That is that, go on from there. Mr. Phoenix: Well, I believe Mr. Worthington at that time attempted to reserve the right to cross-examine. The Court: I don't know. Anyway, go on from there. Mr. Phoenix: I only wanted to clarify that one point. The Court: Don't clarify anything, you go ahead. Mr. Phoenix: I will call as our first witness Mr. Williams."

The court was clearly in error in stating that the witnesses had been cross-examined, as far as defendants' witnesses were concerned. The court, however, reminded counsel that he had the record, and it would seem to have been the duty of counsel to assist the court by reference to the record, instead of simply saying what he believed his predecessor had attempted to do.

We believe, however, that assuming error was committed by the court herein, it was without prejudice since the finding can be supported without reference to the testimony of the witness Wofford given at the hearing of September 14, 1950.

In reviewing the evidence in support of the findings we have found them to be supported by the testimony of witnesses at the hearing of February 7, 1951, without relying in any way upon Wofford's testimony.

It is interesting to note that plaintiff relies in great measure upon the testimony of Wofford in attempting to prove his third contention that appellant had rendered substantial performance and should therefore have recovered the contract price, less damages for defects. Appellant points out that Wofford admitted that the alleged defects could be fixed if the material were taken off and relaid. This was later attempted by the witness Powell, who found that it could not be done. Appellant cites cases on the rule of substantial performance (*Thomas Haverty Co.* v. *Jones*, 185 Cal. 285 [197 P. 105] ; *Brown* v. *Aguilar*, 202 Cal. 143 [259 P. 735] ; *Jones & Laughlin Steel Co.* v. *Abner Doble Co.*, 162 Cal. 497 [123 P. 290]) but this is clearly not a case for application of such rule, as there is evidence to support the finding that the roof as constructed was of no value.

It is finally contended that it was error to exclude evidence of usage and custom in the roofing trade on the question of whether sheet metal work is ordinarily included in a roofing bid. Appellant says that if the contract was that defendants were to pay for the sheet metal work separately, plaintiff is not only not paid for his work and the tile furnished, but he must also pay for the same sheet metal work which defendants presumably used with the new roof. The trial court found that "the sheet metal work was part of the agreed work to be done by plaintiff together with other work and materials." Plaintiff testified that defendant Elliott asked plaintiff to procure the sheet metal and that he did so and paid for it, and that it was no part of the original contract. Defendant Elliott testified that the sheet metal work was part of the contract. There was a direct conflict in the testimony and the trial judge found the fact against appellant. Evidence of usage or custom may of course be introduced to explain the true character of an act, contract, or instrument where such true character is not otherwise plain, but is never admissible except as an instrument of interpretation. (Code Civ. Proc., § 1870, subd. 12.) The question here involved is not one of interpretation of the terms of a contract, it is simply a question of deciding whether the terms were as testified to by plaintiff or by defendants. Plaintiff apparently was attempting here to use evidence of custom to prove

that his version of the terms of the contract was more probable than defendants', as was the case in *Rabin* v. *Craft,* 100 Cal. App.2d 808, 811 [224 P.2d 843], where evidence of custom was held to have been properly excluded. In the case cited by appellant, *Pray* v. *Trower Lbr. Co.,* 101 Cal.App. 482 [281 P. 1036], the contract provided for delivery of lumber "in accordance with the custom of the lumber business." In the present case there is no similar situation calling for interpretation.

It is true that there is no direct evidence as to the sheet metal work used in the second roof. The witness Powell, who constructed the second roof, testified that he tried to use the tiles from the first roof but found that he could not do so. There is no testimony in the record as to the application of the sheet metal work other than that of plaintiff that the sheet metal "is worked in as you go along with the tile. It has to be that way." From this testimony it can logically be inferred that all the sheet metal work was removed when the tile was removed.

In our opinion the findings amply support the judgment and the findings are supported by evidence.

No prejudicial error appearing in the record the judgment must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.