[Civ. No. 21943.   Second Dist., Div. One.   June 4, 1957.]

JOHN C. AGUIRRE et al., Appellants, v. FISH AND GAME COMMISSION, etc., et al., Respondents.

William T. Selby and Glenn C. Garman for Appellants.

Edmund G. Brown, Attorney General, Ralph W. Scott, Deputy Attorney General, James C. Hollingsworth and Edward Henderson for Respondents.

DRAPEAU, J. pro tem.*—The Santa Clara River in southern California flows westwardly from its sources in the Sierra Madre Mountains to the sea. It is about 100 miles long. It rises in Los Angeles County, runs through Ventura County to the ocean at a point midway between the cities of Ventura and Oxnard in the latter county. It is fed by tributary streams, mostly from the north.

The Santa Clara is a typical southern California river, dry on the surface for most of the year, but with water percolating and flowing under the ground all the time. Someone has said that this type of California river is "upside down."

Those who lived along the river in the early days of California depended solely upon its surface flow of water. Three or four times in a century there came years of great rainfall, and the river carried enormous quantities of water. In spate it overflowed its banks for miles, and washed away most manmade things along its course.

Then the river would run more sedately for a time.

Then, as cyclic changes from wet to dry years came, and the surface flow lessened, parts of the river channel would be dry, and other parts of it would have some running water.

*Assigned by Chairman of Judicial Council.

And then occasionally would come the dry year or years—the dreaded *ano seco* of Spanish-Mexican and early American times—when no water flowed at all on the surface of the river, and the parched and barren land within its valley gasped for moisture.

But be the years wet or dry, the deep alluvial lands in the Valley of the Santa Clara Del Sur, served by this river are as rich and productive as any lands anywhere in the world. All that is needed is water, and work, and vision to make the ground immensely productive.

As American farmers took over the agricultural land in the Santa Clara Valley they found they had to have more dependable sources of water than the surface flow of the river. So they put down wells and pumped water from them, to irrigate their farms and orchards. And as time went on, they emancipated a good part of the land in the valley from the uncertainty of surface water flow.

As wells were put down it was learned that the flow of underground water fluctuated as did the surface flow, sometimes more and sometimes less; that that flow could be measured to a certain extent by the rise and fall of water levels in the wells; and that the water levels went down in dry years and with pumping use, and came up in wet years. And then came the lurking fear that perhaps the underground, like the surface flow of the river, might some day fail, and these rich lands might again become parched and barren, or there might not be enough water to irrigate all the lands depending upon wells in the valley.

With this preliminary survey of the river, its water, the land, its people, and their fears, we come to the pending action.

It is to quiet title, and for an injunction. The complaint is brought by a number of plaintiffs, land owners, in what they call the Piru Basin of the Santa Clara River. They own highly productive farming land, largely devoted to citrus orchards, in the vicinity of the town of Piru, in Ventura County, and in a relatively narrow area in the Santa Clara Valley about 13 miles long.

Defendants are a large number of landowners and water users down river.

In their opening brief plaintiffs state their theory of the case as follows:

". . . In substance we state that plaintiffs are overlying owners irrigating their lands from a ground water body

beneath their lands; that the maintenance of the water levels beneath their lands is of prime importance to them; that there is an area of retardation of underflow at or immediately below the defendants' wells which causes accumulation of water in the area above and serves to retard the dropping of the water levels in plaintiffs' wells. Defendants have taken the retarded or accumulated water first as diversion of rising water and then by pumping from the accumulated ground water and have transported it to remote areas downstream which do not overly the area of accumulation, thus lowering the levels in the area of accumulation. The area of retardation is not impervious but does hold back as much as 80% of the water creating a rising water situation. We call the area of retardation a 'barrier' and the area of accumulation a 'basin.'

"The rights of the parties under the condition of such a 'barrier' and such a 'basin' are here involved."

In plaintiffs' reply brief we find a statement of their theory of the case as set forth in their complaint:

"After alleging ownership in paragraph VI the complaint proceeds in paragraph VII to describe the Santa Clara River and the ground-water basins involved. The pertinent part of that statement is:

" 'There are, and from time immemorial have been, a number of ground-water basins in the Santa Clara River Valley including the Piru Basin and the Fillmore Basin, both in Ventura County. These ground-water basins are alluvial filled channels and are bounded on the north and south by relatively impervious beds of shales, conglomerates and sands. The voids in the alluvium contain water which has percolated into them from various sources. Change in precipitation produces changes in re-charge of said underground basins and the water table rises or lowers in accordance therewith.'

"Then after stating figures as to the effect of change in re-charge it is alleged:

" 'The Piru Basin embraces an area about the City of Piru and the Fillmore Basin lies immediately to the west of Piru Basin. The boundary between the Piru Basin and the Fillmore Basin, based on ground-water contours, is approximately one and one-half miles east of the City of Fillmore. The underground flow of water is retarded at the western end of Piru Basin. The water plane to the east of the basin boundary is relatively flat, but it drops off rapidly to the west into Fillmore Basin.' "

After taking evidence for several weeks the trial judge

found that there is no Piru Basin, and that the underground flow of water is not retarded west of plaintiffs' properties. (Ff. 1 and 4.)

To illustrate what the trial judge meant by this finding, part of his memorandum of opinion is as follows:

"This court is convinced that there is no plug or barrier as contended by the plaintiffs separating what they call the Piru Basin from the Fillmore Basin or separating the Piru Basin from any other part of the Santa Clara River system. I am satisfied that the plaintiffs and the defendants are all in the same boat in the same body of water and that is the waters of the Santa Clara river. The plaintiffs and the defendants, in my opinion, all have correlative and reciprocal rights in the underground waters involved in this case."

Plaintiffs appeal from the judgment that followed.

Grounds of appeal are:

That there is no evidence to support the finding that there is no Piru Basin and that the subsurface flow of the river is not retarded west of plaintiffs' lands.

That in any event the findings do not support the judgment.

That the judgment can be construed only to mean that defendants, regardless of the effect on plaintiffs, have the right to use unlimited quantities of water.

So far as plaintiffs' first contention is concerned, it is elementary law that if there is any substantial evidence to support the finding that there is no basin and no barrier, that is all there is to this phase of the case. ■ For it is the duty of the trial judge under our law to declare the truth as he finds it, and it is not the duty or the function of a court of review to pass upon the weight, value, or effect of conflicting evidence upon which a trial judge's declaration is based. No citation of authority is necessary to support this fundamental rule in the law of appeals.

■ And when matters covered by the findings defeat a plaintiff's right of recovery the trial court is not required to make additional findings upon other issues. *Vidler* v. *De Bell*, 125 Cal.App.2d 326, 333 [270 P.2d 120], and cases therein cited.)

■ This court has gone through the trial record, and finds evidence that substantially supports the finding.

No good reason appears why the evidence upon this issue, pro and con, should be set forth at any length in this opinion. Suffice it to say that expert witnesses testified for plaintiffs, with the opinion that there was a barrier below plaintiffs'

property, holding back underground water; and that other expert witnesses testified for defendants, with the contrary opinion that there was no barrier and no basin, and that the underground percolating and flowing water passes by these Piru lands of plaintiffs just as subsurface water passes by all the land along the river.

In view of plaintiffs' insistence as to the weight of the expert testimony, this court has examined with particularity the facts upon which the expert witnesses for defendants based their opinions. We cannot agree with plaintiffs' assertion that the trial judge blindly followed these opinions alone.

Now, with reference to plaintiffs' contention that the findings do not support the judgment.

Read as a whole, the findings do support the judgment.

Plaintiffs say that the finding that there is no Piru Basin standing alone is meaningless. This court has no difficulty in applying the word "Piru Basin" to the area described in plaintiffs' complaint as belonging to them, and from which they seek to stop pumping of water by defendants.

In any event if there be uncertainties in findings they should be resolved in such manner as to uphold, rather than to defeat a judgment. Even where findings are to some extent inconsistent a judgment may not be set aside unless the conflict is clear and material and the findings are incapable of being harmoniously construed. (*Richter* v. *Walker*, 36 Cal.2d 634, 639 [226 P.2d 593].)

And findings should be construed liberally to support the judgment. (*Gin S. Chow* v. *City of Santa Barbara*, 217 Cal. 673, 680 [22 P.2d 5].)

Plaintiffs assert that in particular the findings fail to determine the measure of water use for a fish hatchery operated by one of the defendants, Fish and Game Commission of the State of California. Plaintiffs say that the water taken for this purpose is approximately equal to the entire use of all of the plaintiffs in the Piru Basin.

Assuming that that amount of water is used by the Fish and Game Commission, it is also to be said that after it goes through the fish hatchery the water is taken downstream and put to beneficial use upon other riparian agricultural lands. And it is stated in the briefs for defendants that none of the plaintiffs testified that he had ever been without water sufficient for his needs.

Plaintiffs argue that the rule in *Katz* v. *Walkinshaw*, 141 Cal. 116 [70 P. 663, 74 P. 766, 99 Am.St.Rep. 35, 64 L.R.A.

236], followed in many California cases, that underground water may be put to use only upon the land from which it is taken forbids the taking by the Fish and Game Commission of water that they do not put to beneficial use upon the property where its wells are located.

■ However, the case at bar was not tried with the idea that the rights *inter se* of the parties to it were to be adjudicated. This is made evident in a colloquy between court and counsel for plaintiffs near the end of the trial.

"The Court: Well, in any event, this is purely a suit to quiet title, isn't it?

"Mr. Selby: (Counsel for plaintiffs.) Yes.

"The Court: No more and no less.

"Mr. Selby: To quiet title and to enjoin interference.

"The Court: What about your prayer for general relief? What did you have in mind? Anything in particular other than just a matter of course, you put that in?

"In other words, all the Court can do in this case is to find that you have paramount right, and quiet title to those rights and issue an injunction; that is all the Court could do.

"Mr. Selby: That is all the Court could do.

"*. . . . . . . . . . . .*

"The Court: It isn't one of those cases where the Court would be called upon to enjoin all of the parties from taking as much water as they are taking and adjusting that matter. That is not in this case.

"Mr. Selby: No."

Therefore this court will not now go beyond the determination of the trial judge that the only issues involved were plaintiffs' rights to water under their lands as affected by defendants' pumping of water from wells downstream, and that beyond that no rights *inter se* of the parties were to be adjudicated in this action. (*City of Pasadena* v. *City of Alhambra,* 33 Cal.2d 908 [207 P.2d 17].)

■ Plaintiffs' last ground of appeal may also be stated from their brief: "That the language in the judgment 'that the rights of all parties are "mutual, reciprocal and correlative"' and that plaintiffs were 'not entitled to a judgment against said defendants or any of them *enjoining them from asserting any claim whatever in and to said underground waters adverse to said plaintiffs or any of them*' can be construed only to mean that the defendants, regardless of the

effect on plaintiffs, have the right to use unlimited quantities of water."

Again, keeping in mind the narrow issues here involved, the judgment must be construed to mean that in the facts and circumstances in this case, and this case alone, plaintiffs are not entitled to injunctive relief against the defendants, or any of them. ▮ It does not determine plaintiffs' riparian rights, which are mutual, reciprocal, and correlative with all other such rights along the Santa Clara River. (*City of Pasadena* v. *City of Alhambra, supra,* 33 Cal.2d 908; *City of San Bernardino* v. *City of Riverside,* 186 Cal. 7 [198 P. 784]; *Hudson* v. *Dailey,* 156 Cal. 617 [105 P. 748].)

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied July 2, 1957, and appellants' petition for a hearing by the Supreme Court was denied July 31, 1957.