[Civ. No. 6070.   Fourth Dist.   Mar. 9, 1961.]

ATWILL MORGAN, as Executor, etc., Appellant, v. PANERO THEATRE COMPANY, INC. (a Corporation), Respondent.

Floyd H. Schenk and Theodore A. Cohen for Appellant.

Keith & Graziani and Alfred E. Graziani for Respondent.

GRIFFIN, P. J.—Plaintiff and appellant, Atwill Morgan, as executor of the estate of Helen Seiter, deceased, on December 3, 1958, brought this action for claimed rent due in

the sum of $4,415 on the lease of her theater building in Selma to defendant and respondent Panero Theatre Company, Inc., a corporation, and for declaratory relief. To the complaint is attached the lease, notice of termination and other documents to be construed.

In answer thereto, on June 10, 1958, defendant denied generally these claims and alleged a termination of the tenancy as of June 10, 1957, by notice that prior to that date the building had been seriously damaged by earthquake, was hazardous and in danger of collapsing, and therein seeks a declaration of the rights of the parties. On October 10, 1958, defendant, by permission of court, amended its answer to allege that plaintiff had failed, for a reasonable time after written notice, to make certain necessary repairs to the building as required under paragraph 6 of the lease. A right to arbitration, contained in the lease, was specifically waived.

On March 1, 1938, Helen Seiter leased the theater and one store to one Samuel C. Levin for a period of 19 years and four months, ending June 30, 1957. On April 8, 1947, it was modified by extending it to June 30, 1962, and increasing the rent from $315 per month to $415 per month until July 1957, and thereafter, from July 1957 through June 1962, increasing it to $500 per month. On April 8, 1947, lessee assigned his leasehold interest to defendant corporation in writing with the lessor's consent. On June 10, 1957, defendant, after 10 years' occupancy as lessee, mailed to plaintiff a written instrument entitled "Notice Terminating Lease," which document, in effect, recited that the building had been damaged by earthquake to such an extent that the entire building was structurally unsound and unfit to be used for a public theater; that this condition could not be detected because the walls and ceiling of the building were covered by Celotex and that as soon as it was discovered by defendant an investigation was made and plaintiff was accordingly notified of such condition; that the damage was of such great extent that it would cost an amount far in excess of 50 per cent of the fair market value of said building as it was immediately prior to the time when the damage was done. It then pointed out that defendant was acting under paragraph 7 of the lease.

Defendant employed a structural engineer who made an examination and reported generally of several severance cracks in the walls. He stated that these cracks in the original

south and north walls are "new and extensive" and that the rear wall was bowed because of poor construction and structurally very weak and hazardous, and in his opinion the building would probably collapse in an earthquake; that the roof structure was of such questionable safety it could fall even without an earthquake, and a moderate quake would probably collapse this section; and that the upper portion of the building was also structurally weak. He concluded that the building was structurally unsound and should not be used for a public theater where 636 persons can be seated. He estimated the cost of rehabilitation to run close to $35,000, which would probably exceed 100 per cent of its original cost. A copy of this report was sent to plaintiff. Defendant then had the local building inspector examine the building and he reported generally that the cracks he examined in some portions of the building were of recent origin and left the wall in a weakened condition; that two other walls were cracked and bowed and constituted a hazardous condition and stated that the building did not meet the requirements in construction for occupancy for a theater. In his report to defendant, he stated that this letter constituted a notice that this building should not be used as a theater until the building was rebuilt to the requirements of the Uniform Building Code of Selma.

Some correspondence was exchanged between defendant and plaintiff in reference to these repairs and conditions of the building. Plaintiff insisted that the condition described existed when defendant took over the premises and that it was not caused by earthquake but was due to other elements; that under the lease defendant could not terminate the lease except for fire or earthquake damage, and notice of such damage must be given "promptly" after it occurs, as provided in paragraph 7 (c) of the lease; that there were no earthquakes except the Tehachapi and Bakersfield earthquakes (which occurred in 1952) that would cause such damage, and, accordingly, defendant did not notify plaintiff "promptly" when he notified him on June 10, 1957.

There was conflicting evidence produced by engineers as to the cause and when the damage was done. There is little conflict as to the present condition.

The principal provisions of the lease here involved are paragraph 6 (to which defendant's amended answer applies) and paragraphs 7, 7 (a), 7 (b) and 7 (c), in reference to fire and earthquake damage. Paragraph 6 provides generally:

"At her own expense the Lessor will make such repairs as become necessary throughout the term to the foundations, roof, exterior walls and principal structural supports of the building but all other repairs shall be made by the Lessee, at his own expense and whenever same become necessary. The Lessor shall not be liable for the making of any repairs which she has hereinabove agreed to make until a reasonable time has elapsed after her receipt of written notice from the Lessee that such repairs are necessary . . ."

Paragraph 7 provides: "The provisions of the foregoing article shall not apply to damage by fire or earthquake as to which the following provisions are applicable:

"(a) The Lessee shall promptly notify the Lessor of any damage to the demised premises by fire or earthquake and such notice shall be given in the manner most likely to expedite its receipt by the Lessor.

"(b) In the event the building of which the demised premises are a part shall be destroyed by fire or so damaged thereby that to repair or restore same would cost an amount in excess of fifty per cent of the fair value of the building as it was immediately prior to the time when the damage occurred, then at the option of either party this lease shall terminate. The option to terminate shall be exercised by notice in writing given by the party desiring to terminate to the other party within fifteen days after the occurrence of the damage. The option shall fail if not exercised by either the Lessor or the Lessee in the manner and within the time herein prescribed, but if it be exercised the termination of this lease shall become immediately effective and all rights, duties and obligations existing hereunder (except the right of either party to any money already due or earned) shall forthwith cease.

"(c) However, if the damage be such that to restore or repair the building would cost an amount not in excess of fifty per cent of the fair value thereof as it was immediately prior to the time when the damage occurred, or if under the conditions set forth in section (b) of this article neither party shall exercise her or his option to terminate this lease, then the Lessor at her own expense and as soon as is reasonably practicable shall restore or repair the building to a state and condition at least as good as that prevailing immediately prior to the occurrence of the damage.

"In the event the Lessee shall be deprived of the use of any part of the demised premises on account of the damage

contemplated by the provisions of this article, the rent shall be reduced proportionate to the Lessee's loss of use."

As will be noted, paragraph 6 provides for certain repairs and paragraph 7 provides that paragraph 6 shall not apply to damage by *fire* or *earthquake* "as to which the following provisions are applicable." Then follows paragraph 7 (a) referring to both *fire* and *earthquake,* but paragraph 7 (b) refers only to destruction by *fire* and provides for the termination notice. Apparently the parties hereto have tried this case on the theory that paragraph 7 (b) also applies to earthquake damage and the trial judge has so construed the lease. None of the parties questioned this interpretation on this appeal or in their briefs. We will therefore abide by the rule that parties to a contract shall be bound by the construction they themselves have placed on their agreement. The finding of the trial court that it should be construed as acted upon will not be disturbed by an appellate tribunal. (12 Cal.Jur.2d § 131, p. 343.) "With few exceptions, the scores of cases in which the rule of theory of the case has been applied have been those in which judgments have been affirmed. Thus the rule is almost always applied to hold the *appellant* to his theory of the case, and the statement of the rule is occasionally limited to appellants." (2 Stanbury, California Trial Practice, § 1061, p. 273, citing *Arthur* v. *London Guar. & Acc. Co.,* 78 Cal.App.2d 198, 203 [177 P.2d 625]; *Rogers* v. *Los Angeles Transit Lines,* 45 Cal.2d 414, 418 [289 P.2d 226].)

The trial court found generally in favor of defendant and that defendant went into possession on March 29, 1947, and remained until June 10, 1957, and then vacated the premises; that defendant paid all rental due under the lease; that on June 10, 1957, defendant, for good cause, served a valid notice of termination of the lease and the lease was terminated as of that date; that at the time of service of such notice the building was seriously damaged by earthquake and in danger of collapse and to restore the same would cost in excess of 50 per cent of the fair value of said building as it was immediately prior to the time when the damage occurred; and that defendant did exercise the option in paragraph 7 of the lease. It then found that the lessee promptly notified lessor of said damage immediately upon defendant's discovering the same, and did all things necessary to terminate the lease; that said building is not now and has not been safe or fit for use as a theater "since prior to June 10, 1957," and defendant had the right and option to terminate the

lease on said grounds and ordered the lease cancelled as of June 10, 1957. The trial court rejected plaintiff's proposed findings and judgment was rendered according to the findings signed.

On this appeal, plaintiff claims the findings were insufficient because they failed to designate the date the earthquake damage occurred and such a finding is essential to a proper determination of the action because defendant was required, under paragraph 7 (b), to exercise the option to terminate and give notice thereof within 15 days of the occurrence of the damage; otherwise the option would fail.

The evidence was in conflict as to the time when the damage described occurred and whether it was by earthquake or other causes. There was considerable evidence that the 1952 earthquake may well have caused severe damage to the building which would not necessarily be noticeable to a layman, but which was later discovered by a structural engineer. The testimony of defendant was that a general inspection was made of the premises on occasions during the term of occupancy by defendant, but the actual seriousness of the damage was not discovered until about June 1, 1960. There is no question but what the damage did exist and that presently the building is unfit for occupancy for the purpose for which it was leased. The truth of the conflicting evidence was a question for the trial court to determine and it did find that defendant promptly notified lessor of such damage immediately upon discovery and gave timely notice terminating the lease. We believe this finding is sufficient and is supported by the evidence.

Next, it is claimed that the findings are insufficient in failing to find as to the value of the Selma Theatre building prior to the earthquake damage and in addition the cost of restoration after said damage occurred. (Citing paragraph 7 (b) of the lease and *Williams* v. *Elliott*, 127 Cal.App.2d 357 [273 P.2d 953].) There was evidence that the theater, at the time of the death of Helen Seiter, was appraised at $45,000 on September 16, 1957. The engineers estimated that, as of May 1957, it would cost around $35,000 to rehabilitate and render the structure safe. It was estimated that $1,000 a front-foot, or $60,000, was the asking price in October 1957. No other evidence of value was presented by either party. The court did directly find that to repair the damage by earthquake would cost in excess of 50 per cent of the fair market value of the building as it was immediately prior to the time

when the damage occurred. The finding was sufficient and the question of value was for the trial court to determine. ■ The trial judge has a wide discretion in fixing values. (*City of Fresno* v. *Hedstrom,* 103 Cal.App.2d 453, 461 [229 P.2d 809].)

■ Next, it is argued that the trial court failed to find on the claim presented by the amended answer and it is therefore difficult for plaintiff to determine whether there was a breach of the lease on the earthquake damage clause under paragraph 7 (b) of the lease, or failure to repair under paragraph 6 thereof, as alleged in the amended answer. The claim is that the notice of termination did not give plaintiff an opportunity to repair under paragraph 6 and the court failed to find on the issue thus raised. (Citing such authority as *Andrews* v. *Cunningham,* 105 Cal.App.2d 525 [233 P.2d 563]; Civ. Code, § 1440.)

· Since the trial court found that the lease was terminated on June 10, 1957 (apparently under paragraph 7 (b) of the lease) on sufficient evidence, a further finding as to any violation of paragraph 6 thereof would be unnecessary and such failure to find thereon would not prejudice plaintiff. (*Duval* v. *Duval,* 155 Cal.App.2d 627 [318 P.2d 16]; *Aguirre* v. *Fish & Game Com.,* 151 Cal.App.2d 469 [311 P.2d 903].)

■ The court found that defendants went into possession on March 29, 1947, and remained in possession until on or about June 10, 1957. Plaintiff argues that there was no evidence that defendant vacated the theater on that date, since the evidence shows that the seats therein were not removed until the end of August and the parties stipulated that the theater was operated until June 29, 1957, at least to a limited extent. The claim is that plaintiff should at least receive rent for this period and the finding that defendants had paid all rental charged under the terms of the lease to and including June 10, 1957, is lacking in evidentiary support. The further claim is that the court may not adopt findings in conflict with stipulated facts. (Citing *Capital National Bank* v. *Smith,* 62 Cal.App.2d 328 [144 P.2d 665] and *Wilson* v. *Mattei,* 84 Cal.App. 567 [258 P. 453].) The stipulation was to this effect and this general rule applies. Under the terms of the lease, the rent was payable in advance on the first day of each month. The testimony does show that defendant made no payments of rent for June, July or August, and the stipulation was that the theater was operated at least until June 29, 1957.

A judgment for rental for occupancy after June 1, 1957, would have been authorized. Defendant's counsel gives no satisfactory answer to this point in his brief. ▇ In *Shenson* v. *Shenson*, 124 Cal.App.2d 747, 753 [269 P.2d 170, 270 P.2d 896], it was held that: "The tenant holding over wrongfully is liable for the reasonable value of the use and occupation; the tenant holding over with his landlord's consent is liable only for the rental fixed by the lease."

Further consideration should be given to this claim and judgment for plantiff rendered accordingly.

Other arguments in respect to the findings and sufficiency of the evidence to support these findings are lacking in merit.

All portions of the judgment, except that portion finding that there was no rental due to plaintiff after June 1, 1957, are affirmed. The remaining portion of the judgment is reversed and the trial court is directed to make proper findings and enter judgment for such rental as may be due after June 1, 1957, up to the time possession of the theater was surrendered to plaintiff. Each party to pay own costs on appeal.

Shepard, J., and Coughlin, J., concurred.