[Civ. No. 21753.   First Dist., Div. Three.   Nov. 23, 1964.]

FRANCIS K. COOK, Plaintiff and Respondent, v. MONROE G. THOMSON, Defendant and Appellant.

Marcel E. Cerf, Robinson & Leland, Henry Cohen and Mark Leland for Defendant and Appellant.

Robert J. Cort and Allan L. Sapiro for Plaintiff and Respondent.

SALSMAN, J.—Respondent Cook's complaint against appellant contained two counts, the first upon an express oral contract to pay respondent $10,000 for certain services, and the second upon a common count for services rendered. The trial court found that appellant had entered into an oral agreement whereby appellant agreed to pay respondent for his services ''a finder's fee, and this court finds a reasonable fee determined by said court and said parties to be in the sum of $2,000.00 as and for said compensation and finder's fee. . . .'' Additionally the court found that ''pursuant to said oral agreement'' respondent had performed ''all the terms and conditions required of him by said oral agreement,'' and further, that ''the reasonable value of said services . . . is the sum of $2,000.00.'' After allowing appellant credits in the sum of $948.11, concerning which there is no dispute, judgment was entered in favor of respondent for $1,051.89.

Appellant's principal contentions on appeal are that there is no evidence to support the court's finding of an express contract; that because no benefit was conferred upon appellant recovery may not be based upon any theory of implied contract; and that there is no evidence upon which to base a finding as to the reasonable value of respondent's services.

There was evidence that appellant wished to sell the stock of a certain corporation owned and controlled by him, and bargained with respondent for his assistance. Respondent testified that the parties entered into an oral agreement to the effect that, if respondent would obtain a stock broker who would agree to market the stock of appellant's corporation on a ''best efforts'' basis, appellant would pay respondent a ''finder's fee'' of $10,000. It was not disputed that respondent did find a broker and that appellant and the broker entered into an agreement for the sale of the corporation's stock. Appellant, however, asserted that he never agreed to pay respondent anything unless the stock of the corporation was

in fact sold to the public. No such public sale was ever accomplished.

It is true there is some ambiguity in the trial court's findings, and we cannot say with absolute certainty whether the court intended to allow a recovery upon an express contract or only upon the common count cause of action. We must give the court's findings a liberal but reasonable construction, however, and if reasonably possible construe them so as to uphold the judgment rather than to defeat it. (*Aguirre* v. *Fish & Game Com.*, 151 Cal.App.2d 469, 474 [311 P.2d 903]; *Anderson* v. *Pastorini*, 117 Cal.App.2d 428, 431 [255 P.2d 855]; 48 Cal.Jur.2d, p. 317.) When this is done it is apparent that the trial court found the existence of an oral agreement between the parties and further that respondent was to be compensated for his services. There is conflict in the evidence concerning whether respondent was to be paid regardless of the sale of the stock or only in the event the stock was in fact sold. The trial court resolved this conflict, and under long established rules we may not set such a finding aside. (*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140, 142 [134 P. 1157].) This also disposes of appellant's contention that he received no value from respondent's services. When respondent obtained the services of the licensed broker, and when appellant entered into the ''best efforts'' agreement with the broker, respondent's services were complete. When this was done, appellant had received all of the benefits to which he was entitled by the terms of the agreement, and respondent was entitled to his compensation.

Since the court found the existence of an oral contract between the parties, section 1611 of the Civil Code becomes relevant. That section states ''When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth.'' Having found the existence of a contract but with no meeting of the minds concerning the amount of consideration to be paid to respondent, it became the duty of the court to ascertain from the evidence the reasonable value of respondent's services. The court fixed the amount at $2,000. Appellant argues there is no evidence whatever to support such a finding. This is not correct. Although respondent throughout his testimony insisted he was to be paid $10,000, there is evidence from which the trial

court could properly infer that $2,000 was a reasonable amount to be allowed for respondent's services. The evidence was this: In a conversation with the stock broker the subject of respondent's compensation was discussed and appellant stated, "I'm taking care of Cookie" (respondent); additionally, and a comment of some significance, appellant asked the stock broker if he, the broker, would pay respondent $2,000 for having "brought the deal in." Also, appellant's accountant testified that appellant at one time said he would pay respondent "$2,000 if and when the securities were sold." While this evidence is far from overwhelming it is sufficiently substantial so that the court could conclude that $2,000 was a reasonable sum to be allowed to respondent for the services rendered under the oral contract.

The judgment is affirmed.

Draper, P. J., concurred.

DEVINE, J.—I dissent as to the issue of reasonable value. I believe the case should be remanded to the trial court for further evidence on this single issue. It seems to me that the inquiry of the broker whether he would pay respondent $2,000 for "having brought the deal in," besides being a mere question, has relevancy only to a possible value to the broker for new business acquired. It does not purport to measure the value to the prospective seller, appellant. Appellant's statement that he would pay respondent "$2,000 if and when the securities were sold" does not seem to me to indicate that this is a measure of value where the securities are not sold.