[Crim. No. 4741. Second Dist., Div. One. Jan. 21, 1952.]

THE PEOPLE, Respondent, v. ROY J. BECKER, Appellant.

S. V. O. Prichard for Appellant.

Edmund G. Brown, Attorney General, Dan Kaufmann, Deputy Attorney General, S. Ernest Roll, District Attorney, Marcus R. Brandler and Thomas P. Finnerty, Jr., Deputy District Attorneys, for Respondent.

HANSON, J. pro tem.—The motion by the People to dismiss the appeal in this case presents the single question whether the mere resignation of a school director after his conviction upon the written accusation of a grand jury charging him with willful and corrupt misconduct in office is to be deemed a waiver of his right to a decision on the merits upon his appeal.

The accusation charged the appellant, as defendant below, with having voted as a director of the Board of Education of the City of Los Angeles to have it enter into three contracts with the Landier Management Company at a time when the defendant had an interest in the contracts. The accusation is captioned: "ACCUSATION WILLFUL OR CORRUPT MISCONDUCT IN OFFICE (Section 3060 Government Code of the State of California)." It then proceeds as follows: "The Grand Jury . . . hereby accuses ROY J. BECKER of willful and corrupt misconduct in office, committed as follows: . . . the said ROY J. BECKER willfully, unlawfully and corruptly violated Sections 1011 of the Education Code . . ., 1090 of the Government Code . . ., and Section 1097 of the Government Code . . . by then and there being interested in" (naming three contracts entered into by the board of education with the Landier Management Company).

Section 1011 of the Education Code which the accusation charged was violated provides that "No member of the governing board of any school district shall be interested in any contract made by the board of which he is a member." Section 1090 of the Government Code provides that "Members of the Legislature, State, county, township and city officers shall not be interested in any contract made by them in their official capacity, or by any body or board of which they are members," and section 1097 of the same code provides that

766

"Every officer or person prohibited by the laws of this State from making or being interested in contracts, . . ., who violates any of the provisions of such laws, is punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in the State prison for not more than five years, and is forever disqualified from holding any office in this State."

. Section 3060 of the Government Code referred to in the caption of the accusation reads as follows: "An accusation in writing against any district, county, township, or municipal officer, for willful or corrupt misconduct in office, may be presented by the grand jury of the county for or in which the officer accused is elected or appointed . . ." Section 3070 of the same code provides that "The trial shall be by a jury, and conducted in all respects in the same manner as the trial of an indictment." Section 3072 provides that "Upon a conviction and at the time appointed by the court it shall pronounce judgment that the defendant be removed from office . . ." It should perhaps be added that Penal Code, section 683 provides as follows: "The proceeding by which a party charged with a public offense is accused and brought to trial and punishment, is known as a criminal action," and that section 889 of the same code provides: "When the proceedings are had for the removal of district, county, municipal, or township officers, they may be commenced by an accusation or information, in writing, . . ."

Accordingly it is plain that the accusation was framed so as to charge various violations of the statute but with the punishment limited to a removal from office. For our purposes it is not necessary to portray or endeavor to define the proceedings any further.

A jury being waived the case was tried by the court which on August 27, 1951, found the defendant guilty as charged and by its judgment entered upon the same day removed the defendant "from office as a member of the Board of Education of the City of Los Angeles, and that said office is now declared vacant." Two days later on August 29, 1951, the defendant served and on September 6, 1951, filed his notice of appeal. After the filing of the notice of appeal the defendant on that same day appeared before the board of education where he stated: "A notice of appeal in my case has been filed today and it is my intention to prosecute this appeal, as far as the courts will permit, to vindicate my good name and to

reverse the judgment pronounced against me that I have been guilty of willful and corrupt misconduct in office.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"In order to make clear to all that I am prompted in making this appeal only by a desire to clear myself of the charges that have been made against me, and also to relieve the Board of any complications that might be involved in my continuance as a member of this Board, I hereby tender my resignation as of this date."

The resignation was thereupon accepted by the remaining members of the board.

The attorney general contends that the appeal should be dismissed for two reasons. *First,* because we are not in a position to render an effectual judgment, i.e., that a reversal could not restore appellant to the office from which he resigned; *second,* because if we should reverse the case for error defendant could not be "retried inasmuch as the action lies only against one in office."

It is a sufficient answer to the last contention to point out that the defendant held the office at the time the accusation was filed and at the time the judgment was rendered. It is that status and not his status on retrial that governs. We pass then to a consideration of the first contention.

The offenses charged were, as appears by the statutes quoted, of sufficient gravity to warrant punishment not merely of removal from office, but fine and imprisonment in the penitentiary along with disqualification to hold any public office in the future. Inasmuch as the offenses charged were of a character which would warrant different types of punishment we need to keep constantly in mind that an offense is one thing and the punishment therefor quite another. The conviction involves certain disqualifications which would not follow from the commission of the crime without conviction. (See Williston, *Does a Pardon Blot Out Guilt?*, 28 Harv.L. Rev. 647, 653.) The action below was not merely one to remove the defendant from office, but to convict for an offense and *thereby* achieve the defendant's removal. The resignation tendered by the defendant—not to the court—but to the board of education and accepted by the latter, did not eliminate the conviction. Unless and until the conviction is set aside the criminal record stands. The resignation was not an election to let it stand; it was not made in compliance with the judgment but for the reasons stated by the defendant to the board at the time of resignation. The offense

charged, if true, would not have been erased by the resignation even if the latter had preceded the filing of an accusation.

The right of every man to his day in court is not limited to the trial court but embraces as well his day in the appropriate reviewing court. Courts of review, like trial courts, sit to decide cases on their merits unless there be a want of jurisdiction, a request to give an advisory opinion or its counterpart, or to decide an academic question or the like. Owing to the numerous cases which come before our busy courts of appeal for review which possess little or no merit there is real justification now and then, for a dismissal of them without a decision on the merits. But many of the tests for dismissal as evolved in America, as contradistinguished from those in England, are far from persuasive. The rather general and oft-repeated phrases that just because a judgment by the reviewing court may "prove ineffectual" or that there is nothing "on which its judgment can operate" travel in a circle. Generally, it is only where the holding is based on the want of an actual controversy that a dismissal may possess merit, but quite too often appeals are dismissed upon grounds that are entirely negligible. Against this improper trend our Supreme Court has within the last three months taken a very decided stand (*Reitano* v. *Yankwich*, 38 Cal.2d 1 [237 P.2d 6]), which we interpret as requiring us to deny the motion to dismiss. Moreover, we think, as did the court in *Inchbald* v. *Robinson*, 4 Ch.App. 388 (1869), that the true rule is that an appellant has a right to have settled on appeal whether there has been a ground of complaint against him and, what is more, that such a ground may not be deemed to be waived merely because a reversal of the judgment is "ineffectual" to reinstate the original status quo.

The defendant resigned from the Board of Education so as not to embarrass its members while a conviction hung over his head. In *Commonwealth* v. *Fleckner*, 167 Mass. 13 [44 N.E. 1053], the defendant appealed from a judgment of conviction which he later satisfied. The language of Justice Holmes in that case is applicable to the facts of this case. He said: "We should be slow to suppose that the legislature meant to take away the right to undo the disgrace and legal discredit of a conviction . . . merely because a wrongly convicted person has paid his fine or served his term," or, as in the case before us, resigned his office.

Likewise, in speaking to the point the Indiana Supreme Court recently has said: ". . . it would seem absurdly incon-

sistent to dismiss as moot a proceeding initiated to clear one's reputation of the infamy and stigma resulting from an allegedly erroneous conviction on a criminal charge, even though the one seeking vindication cannot, for reasons of public policy, recover the amount of his fine and costs, nor compel the state to pay damages for his unjust imprisonment.

" 'An erroneous judgment against him is an injury per se, from which the law will intend he is or will be damnified by its continuing against him unreversed. . . . A judgment on the merits is conclusive between the parties, and, if not by direct, it may be followed by remote consequences actually injurious.' *Bartholemy* v. *People*, 2 Hill (N.Y.) 248, 255.'' (*State* v. *Killigrew*, 202 Ind. 397 [174 N.E. 808, 74 A.L.R. 631].)

Turning to our own decisions we find it stated in *In re Byrnes*, 26 Cal.2d 824 [161 P.2d 376] : "For although Byrnes served the full terms of imprisonment imposed under the judgments of conviction in the first action, that fact does not bar his right to an appeal from such judgments for the purpose of clearing his name (See *People* v. *Chamness*, 109 Cal.App.Supp. 778 [288 P. 20] ; *In re Lincoln*, 102 Cal.App. 733 [283 P. 965] ; 18 A.L.R. 867, 872). . . .'' So in *People* v. *Chamness, supra,* it was said : "We are satisfied that a defendant convicted of a criminal offense and faced with a term in jail unless he pays a fine does not by paying the fine waive his right to appeal. There is no basis in fact for the contention that he waives his appeal, for the thing done bears no inconsistent relation to the thing to be done, so there is not factually an election. Nor is the one step a relinquishment of the right to pursue the other by virtue of any statute or written rule of court. Rather it is a practice adopted by the courts out of necessity, because : 'The demands of actual, practical litigation are too pressing to permit the examination or discussion of academic questions,' as was quoted in *Foster* v. *Smith* (1897), 115 Cal. 611 [47 P. 591]. It is a practice which may be departed from if public interest requires. (*Piper* v. *Hawley* (1918), 179 Cal. 10 [175 P. 417].) If the defendant has a real though perhaps not a legal interest in the determination of the questions involved, even though the judgment itself has been satisfied, it seems to us that the press of other business is no justification for dismissing the appeal on hand. It is to substitute fantasy for fact to say the defendant's real interest in the case ceases

with the payment of the fine. Is a good name no longer to be chosen rather than riches? Is a question alive so long as the payment of one hundred dollars is involved, but moot when only the matter of a besmirched name remains? We prefer to follow those courts, in the minority though they are, where an appeal is considered useful though it may serve no purpose but to give a man a chance to clear his name."

*People* v. *Craig,* 9 Cal.2d 615 [72 P.2d 135], and *Reid* v. *Superior Court,* 44 Cal.App. 349 [186 P. 634], relied upon by the attorney general are not in point. In the Craig case the defendant was convicted of a felony in the federal court. On the basis of that conviction a quo warranto proceeding was instituted against him in the state court seeking his removal from the state office he held. From an adverse decision against him in the state trial court he appealed. Pending that appeal his conviction in the federal court became final on October 12, 1936, when the Supreme Court of the United States declined to review it. Thereafter, while the appeal in the state court was still pending the defendant submitted his resignation as a state officer to the governor. Upon those facts the Supreme Court of this state dismissed the appeal. The only vital question before the state court on appeal was whether the procedure by quo warranto was applicable. The determination of that question necessarily became academic by reason of the resignation. We have no such case here.

The case of *Reid* v. *Superior Court,* 44 Cal.App. 349 [186 P. 634], held that the lower court had jurisdiction and hence that certiorari to review the proceedings below did not lie. The discussion by the court in that case upon the point involved in the instant case was not necessary to a decision of the case. But even if it had been we would be unable to follow the views there expressed. The case has never been cited at all by the Supreme Court nor has this dictum therein ever been cited by any District Courts of Appeal.

The motion to dismiss the appeal is denied.

Doran, Acting P. J., and Drapeau, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 18, 1952. Spence, J., was of the opinion that the petition should be granted.