BALTHIS, J.
 

 Defendant built a swimming pool for plaintiff at his Rolling Hills home. Several months after completion plaintiff found that the pool leaked and that there were other defects; after complaints made to defendant which were not solved or adjusted, plaintiff sued to recover damages for faulty construction of the pool.
 

 After a trial by the court, judgment was for plaintiff. Defendant moved for a new trial which was denied. Defendant appeals from the judgment and the order denying the motion for a new trial.
 

 
 *608
 
 The order denying the motion for a new trial is not an appealable order.
 
 (Rodriguez
 
 v.
 
 Barnett,
 
 52 Cal.2d 154, 156 [338 P.2d 907]) and the purported appeal therefrom is dismissed.
 

 Based upon the findings made by the trial court which are fully supported by the evidence and which on appeal are construed most favorably for plaintiff (as respondent), the essential facts may be summarized as follows:
 

 On June 6, 1959, the plaintiff entered into a contract providing for the construction by defendant for plaintiff of a swimming pool for $3,435. On July 10, 1959, after defendant had commenced performance and during the course of construction, defendant informed plaintiff that, because the ground at which the swimming pool was being erected was filled, extra reinforcement and engineering would be necessary to insure and protect against cracks and leaks for which there would be an extra charge of $1,134.35. The parties then entered into a supplemental written agreement under which plaintiff agreed to pay defendant this extra sum. A 10-year guarantee was given to plaintiff by defendant as a part of the contract for the purchase and construction of the swimming pool which provided in part as follows: “Anthony Pools, Inc., a corporation, does hereby undertake and agree with Larry J. Bausé in connection with a swimming pool constructed for owner, hereinbefore named, at No. 1, Bowie Road, Rolling Hills ... (1) that said swimming pool will remain structurally sound for a period of 10 years, (2) the parties understand and agree that the term ‘structurally sound’ means that the pool proper is capable of containing and holding water.”
 

 Plaintiff paid all of the sums called for in the agreement and the supplemental agreement, and defendant completed construction in September of 1959.
 

 In January 1960 plaintiff noticed cracks in the pool and thereafter it began to leak. By April 1960 there were about 150 cracks. Six of these were large cracks and were the main ones causing the trouble. The water from the swimming pool leaked about 150 gallons a day whereas the normal amount of leakage or evaporation would be about 25 gallons per week. In addition to the cracks and the leakage, the pool lost its “levelness” in that it was tilted, or raised, about % of an inch, or an inch, in the southeast corner.
 

 Prom time to time plaintiff made complaints to defendant about the deficiencies but defendant ignored most of plaintiff’s
 
 *609
 
 calls and did nothing to make any substantial repairs or correction of the defects. Defendant did send its engineer, Mr. Mackintosh, to visit plaintiff’s pool but nothing substantial resulted from this inspection.
 

 The complaint filed by plaintiff sets forth six causes of action; breach of contract of a ten-year guarantee, breach of contract of a one-year guarantee, misrepresentation, breach of implied warranty, negligence and money had and received. The court found for plaintiff on all but the third cause of action dealing with misrepresentation in the procuring of the contract. In a memorandum decision the learned trial judge states the essence of his findings and conclusions as follows:
 

 “The evidence in this case clearly establishes that the defendant did not construct the pool in question in accordance with its contract and applicable ordinances, in consequence of which the pool is structurally unsound and incapable of containing and holding water. In this respect defendant also breached its written warranty that the pool would remain structurally sound for a period of ten years by reason of its failure and refusal upon demand to repair the pool so as to conform to such warranty.
 

 “The court further finds that the pool is not capable of being repaired so as to meet the standard required by the contract and warranty except by completely removing and reconstructing the same.
 

 “Under the circumstances the doctrine of substantial performance upon which defendant seeks to rely is obviously inapplicable here. Accordingly, the court concludes that the defendant having failed to supply a structurally sound pool, the measure of damages applicable is the amount paid by the plaintiff to the defendant, $4,569.35, plus the sum of $2,000.00 as the cost of removing the present pool, and the additional sum of $750.00, the cost of refilling the resulting excavation after its removal.”
 

 Plaintiff sought, but the court denied, damages for loss of use of the pool.
 

 The contentions of defendant on this appeal are as follows:
 

 (1) there was “a pattern of vague pleadings” and “nondisclosure in discovery and pretrial” in this case which were contrary to procedural rules and elements of fair play;
 

 (2) the trial court committed reversible error in refusing to visit the premises; (3) the findings and judgment are not supported by substantial evidence; (4) the doctrine of sub
 
 *610
 
 stantial performance is applicable and this does not justify the judgment rendered by the trial court.
 

 We find no merit to the first contention made by defendant. The pleadings were not vague but plaintiff’s complaint, upon which the action was based and the judgment rendered, was complete, clear and specific in showing the gravamen of the action. We are not concerned with the third cause of action based upon misrepresentation because the trial court ruled that it did not state facts sufficient to constitute a cause of action and no relief was given thereon. The first two causes of action were in contract; the first for breach of the 10-year guarantee and the second for breach of the one-year warranty or guarantee. All of the ultimate facts are sufficiently pleaded. The fourth cause of action is for breach of implied warranty in that the swimming pool “developed cracks” and in that “it does not and will not hold water, and cannot be used as a swimming pool and is not fit for the purpose for which it was intended.” The fifth cause of action alleges that as to the swimming pool “defendant designed and constructed the same in a careless and negligent manner and so carelessly and negligently that the said swimming pool, shortly after its purported completion by the defendant, commenced to and still does leak and develop cracks, to the extent that the same does not and will not hold water and cannot be used as a swimming pool.” Here again the ultimate facts are stated so that the issues may be sharply drawn thereon.
 

 The pretrial conference order made the “joint pretrial statement” of the parties a part of the order. This agreed statement sets forth the contentions of the parties very simply as follows:
 

 “Contentions of Plaintiff. Plaintiff makes the contentions set forth in each cause of action in the Complaint. In brief these are that plaintiff bought and paid for a swimming pool and got a defective pool which leaks and is cracked and cannot be used.
 

 “Defendant’s Contentions. The defendant makes the contentions set forth in its Answer and Cross-Complaint. These are generally that defendant built a good pool and if it leaks or is cracked or can’t be used, plaintiff is responsible therefor.”
 

 Defendant took advantage of discovery procedures, taking three depositions including that of plaintiff. Defendant’s counsel and its expert together inspected the pool the day
 
 *611
 
 before the trial and defendant’s engineer had inspected the pool on previous occasions.
 

 Defendant complains that it was taken by surprise because approximately one week before the trial plaintiff had core samples taken of the gunite used in the pool itself and the written report (introduced into evidence) of these tests is dated the day before the trial.
 

 We find nothing improper or unfair in plaintiff’s obtaining this evidence (from his own pool) or in thus preparing for trial. The issues of the case were properly and rather fully set forth in the pleadings and in the pretrial order. It was clear that plaintiff contended that the pool was defective and structurally unsound. Pretrial and discovery procedures do not restrict the parties from obtaining evidence on the issues (as delineated by pretrial) right up to the time of trial. The fact that convincing evidence against a defendant is discovered a week before the trial instead of months before is hardly something about which defendant can complain. Defendant had its engineer make examinations of the pool almost a year prior to the trial; he did not see fit to recommend core tests of the gunite nor did he take any for defendant. Defendant cannot complain of plaintiff’s careful preparation for trial as “surprise” or “unfair tactics” when it had ample opportunity to prepare but did not do so.
 

 Defendant’s counsel and its expert visited the pool the day before the trial commenced. During the trial defendant’s counsel examined the witnesses with respect to the core tests. He did not then ask to make his own core tests. He did not then ask to subject the core samples to any tests by anyone employed by the defendant. Defendant’s expert tried to explain away the results of the core tests as of no consequence. The defendant stood by, waiting for the decision, and then for the first time on motion for new trial asked permission to take core tests.
 

 Surprise as to testimony produced by plaintiff cannot be the subject of any complaint where the defendant failed to assert such surprise at the earliest possible moment, rather than remain silent at the time the testimony was offered and claim surprise only after the decision was rendered.
 
 (People
 
 ex rel.
 
 Dept. of Public Works
 
 v.
 
 Donovan,
 
 57 Cal.2d 346 [19 Cal.Rptr. 473, 369 P.2d 1];
 
 Valentine
 
 v.
 
 Kaiser Foundations Hospitals,
 
 194 Cal.App.2d 282, 291 [15 Cal.Rptr. 26];
 
 Downing
 
 v, Silberstein, 89 Cal.App.2d 838, 844 [202
 
 *612
 
 P.2d 91].) Defendant does not assert that the evidence with respect to the core tests was incorrect or false in any way; merely that “the defendant . . . was never able to obtain a verification of the testings made.”
 

 We find that the case was fairly and reasonably tried on proper pleadings and there was no violation of the rules of discovery or pretrial.
 

 The next contention of defendant that the trial court committed reversible error in refusing to visit the pool site is likewise untenable. Whether the trial court should or should not view the premises is entirely within its discretion. The entire application of defendant for the court to view the premises is set forth in the footnote.
 
 [1]
 

 In
 
 Crawford
 
 v.
 
 Senegram,
 
 7 Cal.App.2d 449 [46 P.2d 173], it was held there was no error in refusing to view the premises. The court said at page 450: “The premises in question were diagramed and thoroughly explained by the witnesses. It clearly appears from the record that the court very correctly deemed a view of the premises to be unnecessary.” (See also
 
 Urton
 
 v.
 
 Ousdal,
 
 84 Cal.App. 211, 213 [257 P. 584], and for a statement of the rule, 48 Cal.Jur.2d 278.)
 

 Defendant next argues that the findings and judgment are not supported by the evidence. The questions whether the pool was structurally sound, whether it was capable of holding and containing water, whether the design and construction was free from defects in material and workmanship, whether defendant was negligent in its design and construction, whether the pool was cracked and the extent thereof, whether it could be repaired or not, the extent of plaintiff’s damage, are all questions of fact.
 

 The trial court made findings on all of these questions in favor of plaintiff and there is substantial evidence in the record to support such findings.
 

 Plaintiff’s ease consisted of the personal testimony of him
 
 *613
 
 self, his wife, three experts (Ayres, Crandall and Roalfe) and the introduction in evidence of the contract and written guarantees, photographs, diagrams, core samples and reports. A review of the expert testimony in detail would serve no useful purpose. Suffice it to say that it was very substantial and fully supports the trial court’s findings and judgment.
 

 In
 
 Stewart
 
 v.
 
 Cox,
 
 55 Cal.2d 857 [13 Cal.Rptr. 521, 362 P.2d 345], a swimming pool ease, the Supreme Court affirmed a judgment in favor of the plaintiffs as property owners for damages caused by the negligence of the subcontractor doing the gunite work. While the holding that a subcontractor may be liable to the property owner may not be material to the discussion here, it is to be noted that the court determined the finding of negligence was supported by the evidence and that such negligence was the proximate cause of the damage. The court said at page 863:
 

 “Here it was obvious that the pool for which Cox provided the gunite work was intended for the plaintiffs and that property damage to them—and possibly to some of their neighbors —was foreseeable in the event the work was so negligently done as to permit water to escape. . . . There is no doubt that plaintiffs suffered serious damage, and the court found, supported by ample evidence, that the injury was caused by Cox’s negligence. Under all the circumstances Cox should not be exempted from liability if negligence on his part was the proximate cause of the damage to plaintiffs.”
 

 Defendant’s final argument on appeal is that the judgment here is not legally justified because there was substantial performance of the contract by defendant. With this argument we do not agree. The trial court specifically ruled that the doctrine of substantial performance relied upon by defendant was inapplicable to the instant case and in that conclusion we concur.
 

 The evidence introduced by plaintiff established that the swimming pool had many (150) cracks, that it leaked 150 gallons a day, that the pool was structurally unsound and that the gunite used was very poor and thin and did not meet the minimum requirements. These defects are in no sense minor or trivial or of a kind which can be taken care of by proper repairs; they are major deviations from the contract. The rule of substantial performance was intended to cover situations where the defects are slight or trivial, or where the imperfections do not affect a substantive part of the work (12 Cal.Jur.2d 443;
 
 J. Musto etc. Co.
 
 v.
 
 *614
 

 Pacific States Gorp.,
 
 48 Cal.App. 452 [192 P. 138];
 
 Brown
 
 v.
 
 Aguilar,
 
 202 Cal. 143 [259 P. 735]), but it was not intended to cover cases where the departures or deviations from the plans are major, where it takes a major operation to remedy the defects, or where the work as constructed is of no real value
 
 (Williams
 
 v.
 
 Elliott,
 
 127 Cal.App.2d 357 [273 P.2d 953];
 
 Shell
 
 v.
 
 Schmidt,
 
 164 Cal.App.2d 350 [330 P.2d 817]).
 

 To summarize, plaintiff did not get a swimming pool that could be used. On this state of the evidence, the measure of damages used by the trial court in rendering judgment for plaintiff was correct.
 

 The judgment is affirmed.
 

 Burke, P. J., and Jefferson, J., concurred.
 

 [1]
 

 “Mr. Leetham: If your Honor please, the only thing that the defense has is the request that the Court view the premises.
 

 “The Court: I don’t see that any particular purpose would be served in this case. I don’t know that I would know anything more about the situation after I looked at it than I did before. We have had a lot of testimony here. I doubt whether it would serve any purpose, Mr. Leetham.
 

 “Mr. Leetham: The defense will rest.
 

 “The Court: If I was going to look at something that I could understand, the location of property, which was sought to be acquired under eminent domain or something of that kind, it might help me, hut I don’t believe that this woul4.”