[Crim. No. 11245. Third Dist. Mar. 19, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM HAWES, Defendant and Appellant.

**COUNSEL**

Barr, Minoletti & Newlan, John D. Barr and Craig A. Sinclair for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney

General, W. Scott Thorpe, Nancy Sweet and John R. Duree, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—Defendant was the elected District Attorney of Shasta County. In an accusation presented by the grand jury on July 11, 1980, he was charged with seven counts of wilful and corrupt misconduct in office. A jury found defendant guilty of of one count of wilful misconduct, acquitted him of three other counts and was unable to arrive at a verdict on the remaining three counts. Defendant appeals from the judgment removing him from office as district attorney. The People's motion to dismiss the appeal will be denied and we shall reverse the judgment of removal.

### I.

■ The People have moved to dismiss the appeal on the ground appeal from a judgment of removal (Gov. Code, § 3072) is not authorized by statute.

The statutory provisions governing removal of local officers other than by impeachment, i.e., by proceedings on an accusation, are found in Government Code sections 3060-3074 (all further statutory references are to sections of the Government Code unless otherwise indicated). These provisions originated in the Statutes of 1851 (Stats. 1851, Second Ex. Sess., ch. 29, §§ 70-83, pp. 219-220) and were later incorporated in the Penal Code when it was enacted in 1872 (former Pen. Code, §§ 758-772). Former Penal Code section 770 (derived from § 82 of ch. 29 of Stats. 1851, Second Ex. Sess.) provided for appeal to the Supreme Court of a judgment of removal. The appeal provision formerly found in Penal Code section 770 was not reenacted when, in 1943, removal proceedings were incorporated into the newly enacted Government Code (Stats. 1943, ch. 134, pp. 978-979, 1010). This omission is the basis for the People's argument that the Legislature intended to eliminate postjudgment review of removal proceedings.

Long before 1943 former Penal Code section 770 had ceased to be of any effect. It was declared unconstitutional in 1914 as an unauthorized

legislative attempt to enlarge the appellate jurisdiction of the Supreme Court beyond the express limits laid down in the Constitution. (*People v. McKamy* (1914) 168 Cal. 531, 535 [143 P. 752].) In 1928 article VI, section 4b, was added to the California Constitution conferring upon the then District Courts of Appeal appellate jurisdiction over removal proceedings.[1] Former Penal Code section 770, long moribund, was not revived by the addition of article VI, section 4b (see *People v. McKamy, supra*, 168 Cal. at p. 535). The constitutional grant of appellate jurisdiction, however, was self-executing, not dependent for its vitality on the existence of implementing legislation. (*Byers v. Smith* (1935) 4 Cal.2d 209, 213-214 [47 P.2d 705]; see e.g., *People v. Becker* (1952) 108 Cal.App.2d 764 [239 P.2d 898].)

In 1966 the voters repealed article VI, section 4b, and adopted a greatly simplified provision governing appellate jurisdiction: "The Supreme Court has appellate jurisdiction when judgment of death has been pronounced. With that exception courts of appeal have appellate jurisdiction when superior courts have original jurisdiction and in other causes prescribed by statute.

"Superior courts have appellate jurisdiction in causes prescribed by statute that arise in municipal and justice courts in their counties.

"The Legislature may permit appellate courts to take evidence and make findings of fact when jury trial is waived or not a matter of right." (Cal. Const., art. VI, § 11.)

The constitutional revision of which article VI, section 11 was a part appeared on the ballot as Proposition 1-a at the general election of November 8, 1966. As an aid to the interpretation of article VI, section 11, we have examined the ballot summary, arguments and analysis concerning Proposition 1-a submitted to the electors in advance of the general election. (See *Amador Valley Joint Union High Sch. Dist. v.*

---

[1]The 1928 constitutional amendment gave the intermediate appellate courts appellate jurisdiction "on appeal from the superior courts (except in cases in which appellate jurisdiction is given to the Supreme Court) in all cases at law in which the superior courts are given original jurisdiction; also, in all cases of forcible or unlawful entry or detainer (except such as arise in municipal, or in justices' or other inferior courts); in proceedings in insolvency; in actions to prevent or abate a nuisance; in proceedings of mandamus, certiorari, prohibition, usurpation of office, *removal from office*, contesting elections, eminent domain, and in such other special proceedings as may be provided by law; also, on questions of law alone, in all criminal cases prosecuted by indictment or information, except where judgment of death has been rendered. . . ." (Italics added; Cal. Const., former art. VI, § 4b; see 2 Deering's Ann. Cal. Const. (1974 ed.) p. 327.)

*State Bd. of Equalization* (1978) 22 Cal.3d 208, 245-246 [149 Cal.Rptr. 239, 583 P.2d 1281].)

Proposition 1-a was the product of the Constitution Revision Commission which was created to recommend revision of California's Constitution. Proposition 1-a represented the first phase of the commission's work. It covered approximately one-third of the existing Constitution, reduced that portion from 22,000 to 6,000 words and undertook to render it into modern, concise and easily understandable language. The detailed analysis of the Legislative Counsel appearing in the voter pamphlet (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 8, 1966) p. 1) describes several "major changes" which would be effected by the proposed revision of the Constitution. No mention is made there or in the ballot arguments in favor of and against Proposition 1-a of the proposed change to the judicial article concerning appellate jurisdiction. We perceive no design in the information supplied the electorate concerning article VI, section 11 to alter the scope of appellate jurisdiction over removal proceedings as conferred by its predecessor, article VI, section 4b. Furthermore the language of article VI, section 11, reveals no intent to diminish the compass of appellate jurisdiction in respect to removal proceedings and we are satisfied that none was intended. Elimination of express mention of removal proceedings from the 1966 revision had no substantive effect as removal proceedings are clearly encompassed within the general language of the 1966 revision.

Under article VI, section 11, except where judgment of death has been pronounced, the Court of Appeal has appellate jurisdiction when superior courts have original jurisdiction. The superior court has original jurisdiction over the trial of an accusation (§ 3063). We conclude jurisdiction over this appeal is authorized by California Constitution, article VI, section 11. That provision is self-executing (*Byers v. Smith, supra*, 4 Cal.2d at pp. 213-214).

In addition to constitutional jurisdiction, there is statutory authorization for the defendant's appeal. Section 3072 provides, as did its predecessor, that "upon a conviction" in a removal proceeding, the court "shall pronounce judgment" that the defendant be removed from office. Penal Code section 1237 provides, as it has since 1872, that an appeal may be taken by a defendant "from a final judgment of conviction." We acknowledge that none of the decisions which have dealt with appellate

jurisdiction of removal proceedings has discussed Penal Code section 1237. However, prior to 1928, reliance on Penal Code section 1237 as a source of appellate jurisdiction over removal proceedings would have been subject to the same constitutional infirmity as reliance on former Penal Code section 770 as an unauthorized attempt to expand appellate jurisdiction beyond the limits plainly spelled out by the Constitution. (See *People* v. *McKamy, supra*, 168 Cal. at p. 535.) Moreover between 1928 and 1966, a self-executing provision of the Constitution specifically provided for appeals from removal actions and no statutory authority was required (*Byers* v. *Smith, supra*, at pp. 213-214).

As matters now stand, the Constitution, without more, confers appellate jurisdiction upon the Court of Appeal over judgments of removal under section 3072. In addition Penal Code section 1237 authorizes appeal by defendant of such judgments to the Court of Appeal. We turn to the merits of defendant's appeal.

## II.

The accusation charges seven instances of misconduct, three of which allege intoxication during working hours. The remaining counts allege failure to make a scheduled court appearance (one count), acting from corrupt and personal motives in requesting excessive bail in a pending criminal case (one count), and authorizing the filing of criminal charges by a nonattorney (two counts). The jury found defendant guilty only of count III which charges: "That on or about January or February 1979 while defendant was acting as District Attorney of Shasta County, defendant committed wilful . . . misconduct in office in that his conduct fell below the standard of decency rightfully expected of a public official, to wit, he became intoxicated during working hours while in Weaverville, California, in the course of the preparation of the prosecution of Jess Cannon."

Defendant contends he is not subject to removal for intoxication during working hours under section 3060 which deals with wilful or corrupt misconduct in office. He argues that intoxication by a county or city officer while in the discharge or neglect of his duties is governed by section 3001, a misdemeanor for which the penalty upon conviction is forfeiture of office. Defendant relies on the rule that a specific statutory provision controls a general one even where the general one standing alone would be broad enough to include the subject matter of the spe-

cific statute (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]). ■ The *Williamson* rule applies even though the general statute contains elements not found within the specific statute if a violation of the latter necessarily or commonly results in a violation of the former and the overall statutory context indicates a legislative intent that the specific provision shall control the general. (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 501-505 [170 Cal.Rptr. 1, 620 P.2d 587].) ■ Defendant argues that by making it the subject of a specific statute, the Legislature evinced an intent that intoxication by a public officer in the discharge of his duties be treated as a distinct form of misconduct. We agree.

Section 3001 provides: "Any State, county, or city officer who is intoxicated while in discharge of the duties of his office, or by reason of intoxication is disqualified for the discharge of, or neglects his duties, is guilty of a misdemeanor. On conviction of such misdemeanor he forfeits his office, and the vacancy occasioned thereby shall be filled in the same manner as if the officer had filed his resignation in the proper office."

In more general terms, section 3060 provides: "An accusation in writing against any officer of a district, county, or city, including any member of the governing board or personnel commission of a school district, for willful or corrupt misconduct in office, may be presented to the grand jury of the county for or in which the officer accused is elected or appointed. An accusation may not be presented without the concurrence of at least 12 grand jurors."

Section 3001 and sections 3060-3074 are found in chapter 7, dealing with removal from office, of title 1, division 4, of the Government Code. Section 3001 is included in article 1 of chapter 7 and sections 3060-3074 constitute the entire article 3 dealing with removal other than by impeachment. With the exception of section 3074 (added by Stats. 1971, ch. 702, § 2, p. 1363), section 3001 and article 3 are part of the same statutory enactment. (Stats. 1943, ch. 134.)

The original application of section 3060 to any "district, county, township or municipal officer" was later changed to cover, as it now does, any "officer of a district, county, or city" (Stats. 1951, ch. 1553, § 16, p. 3537). Subsequent amendments extended its coverage to include any "member of the governing board or personnel commission of

a school district." (Stats. 1955, ch. 1125, § 5, p. 2119; Stats. 1977, ch. 823, § 1, p. 2494.) Section 3001 retains its pristine form.

The overlapping coverage of section 3001 and section 3060 is manifest on the face of the statute. Since the "misconduct in office" condemned in section 3060 is broad enough to include "any willful malfeasance, misfeasance, or nonfeasance in office" whether or not attended by "criminal intention" (*Coffey v. Superior Court* (1905) 147 Cal. 525, 529 [82 P. 75]), the definition is sufficiently broad to encompass intoxication during working hours. (See *People v. Hale* (1965) 232 Cal.App.2d 112, 119 [42 Cal.Rptr. 533].) Both sections 3001 and 3060 apply only to public officers during their terms of office. Both prescribe loss of office as the exclusive sanction for conviction either by forfeiture (§ 3001) or removal (§ 3072).

Beyond these points of similitude, there are obvious differences between sections 3001 and 3060. While both apply coterminously to intoxication of county and city officers, section 3001 applies as well to state officers, a category not covered by section 3060. On the other hand, section 3060 applies also to district officers, including certain school district functionaries, classifications not mentioned in section 3001. Thus in the case of a state officer, section 3001 may be violated without transgressing section 3060. Moreover section 3060 provides on its face for particular applications which are not replicated in section 3001.

These dissimilarities are not alone determinative of the issue. The rule that a specific statutory provision supersedes one more general is not limited to instances where violation of the narrower provision inevitably constitutes a violation of the broader law (*People v. Jenkins, supra*, 28 Cal.3d at p. 502); nor is application of the rule dependent on the existence in the specific provision of elements corresponding to all the possible applications of the general provision (*ibid.*). "If it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute." (*Ibid.*) "The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication

that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and 'requires us to give effect to the special provision alone in the face of the dual applicability of the general provision ... and the special provision ....' (*People* v. *Gilbert, supra*, 1 Cal.3d at p. 481.)" (Fn. omitted; *People* v. *Jenkins, supra*, 28 Cal.3d at pp. 505-506.)

Were the specific not deemed to control the general in the instant situation, section 3001 would be rendered wholly redundant insofar as it applies to county and city officers. ▮ We must construe a statute so as to give effect to the whole and to every word and clause thereof, leaving no part useless or deprived of meaning (*Carleson* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 145, 155-156 [134 Cal.Rptr. 278]). ▮ Viewing as a whole the statute of which these competing, overlapping provisions are a part, we are convinced the Legislature intended that intoxication of city and county officers during duty should be dealt with as a violation of the more specific provisions of section 3001 under the somewhat different procedures applicable to the trial of a misdemeanor as contrasted to the trial of an accusation (see § 3070).

The Attorney General argues that a violation of section 3001 is a crime while a violation of section 3060 is not, and criminal remedies have consistently been held to be cumulative to the remedy afforded by accusation proceedings.

While an accusation proceeding has been described as criminal (*People* v. *McKamy, supra*, 168 Cal. at p. 533), it does not partake of all the incidents of a criminal prosecution. It "is not a prosecution for a 'crime' in the ordinary sense of the word. Its whole object is the removal of the incumbent from office and the judgment can go to no further extent." (*In re Reid* (1920) 182 Cal. 88, 89 [187 P. 7]; see *People* v. *Superior Court* (*Hanson*) (1980) 110 Cal.App.3d 396, 400-401 [168 Cal.Rptr. 21].)

Because it has been so denominated, we do not doubt that violation of section 3001 constitutes a crime in the true sense of the word. Unlike every other act denominated as criminal of which we are aware, however, its sole object is identical to that of an accusation proceeding, i.e., "the removal of the incumbent from office" (*In re Reid, supra*, 182 Cal.

at p. 89) further than which the judgment cannot go. (*Ibid.*; cf. Pen. Code, § 19.) Thus the effect of the disparate classification of proceedings under sections 3001 and 3060 is more apparent than real; their applicability to intoxication of city and county officials is precisely coterminous, constituting them the same genus within the scope of the rule that the specific provision supplants the general. Moreover, the fact the sole remedy for violation of either sections 3001 or 3060 is loss of office renders the People's claim of entitlement to cumulative penalties an abstraction in the instant circumstances.

There are, however, discrete procedural consequences arising from the classification of violation of section 3001 as a misdemeanor. Thus proceedings thereunder are assimilated with those procedures governing misdemeanor prosecutions in inferior trial courts. For example, the prosecution commences with the filing of a complaint in the inferior trial court (Pen. Code, §§ 740, 949); depending upon his custody status the defendant must be brought to trial within 30 or 45 days (Pen. Code, § 1382); and, of crucial significance to these proceedings, the prosecution is barred unless the complaint is filed within one year after the commission of the offense (Pen. Code, § 801). Here the accusation was filed a year and a half after the alleged act of misconduct of which defendant was convicted.

In contrast to a prosecution under section 3001, the trial of an accusation is conducted in all respects in the same manner as the trial of an indictment (§ 3070), and the period of limitations for misconduct in office is six years (§ 3074).

The Attorney General insists that supersession of accusation proceedings by section 3001 will "result in effectively repealing section 3060" because "Almost *any* conduct which amounts to 'willful or corrupt misconduct' is also proscribed by a more specific statute." (Italics in original.) The argument proves too much. The numerous penal provisions cited to us to illustrate the point provide (1) for the traditional criminal punishment of imprisonment, fine or both either expressly or by operation of Penal Code sections 18 and 19; or (2) for forfeiture of office *in addition to* prescribing either the traditional criminal penalties or the sanction of permanent disqualification from holding public office.

None of the penal provisions cited is comparable with respect to penalty to section 3001 which alone among all those which have come to

our attention provides only for forfeiture of office as a sanction. Contrary to the Attorney General's contention, our decision herein does not affect the availability of other criminal penalties cumulative to the remedy of removal in instances such as those cited by the People where the law prescribes them.

Consideration of defendant's remaining contentions is unnecessary in view of our disposition.

The motion to dismiss the appeal is denied; the judgment of conviction is reversed. Because the accusation was filed more than one year after the act of misconduct for which defendant was convicted, the trial court on remand is directed to dismiss count III.

Regan, J., and Dozier, J.,* concurred.

A petition for a rehearing was denied April 13, 1982, and respondent's petition for a hearing by the Supreme Court was denied June 9, 1982.

---

*Assigned by the Chairperson of the Judicial Council.