Opinion
 

 LAMBDEN, J.
 

 Steven Schectman and Law Offices of Pinnock & Schectman (Schectman) appeal from the order granting a preliminary injunction
 
 *1282
 
 requiring them to turn over documents that were removed from Pillsbury, Madison & Sutro (PM&S).
 

 PM&S brought an action against Schectman for specific recovery of personal property and for temporary, preliminary, and permanent injunctive relief. The complaint alleges Schectman gained possession of confidential personnel documents removed from the offices of PM&S without its consent. Schectman represents current and former PM&S employees in connection with employment law claims against PM&S. PM&S also filed applications for a writ of possession, a temporary restraining order, and an order to allow expedited discovery.
 

 Pursuant to stipulation of the parties, the court appointed a special master to review the documents and to make a recommendation to the court as to whether they are legally protectible. The special master found none of the documents violated any attorney-client privilege or constituted work product and none was of a trade secret nature. The special master found a number of documents were intended to be confidential, specifically those involving communications within the human resources department relating to employees. The special master was not given the responsibility of determining whether any of the documents were required to be returned to PM&S.
 

 After extensive briefing and oral argument, the court ruled PM&S owned the documents and most, if not all of them, were intended to be confidential and were understood by the employees at PM&S to be confidential documents. The court found the documents were not directed to any of the former employees concerning their individual status as employees of PM&S but, rather, were documents relating to the performance of their duties while employed by the firm. The court also found the documents included original writings as well as copies of documents and were unique rather than fungible property. The court further found the documents were removed improperly from PM&S and wrongfully possessed by Schectman as the agent of whomever it was who improperly removed the documents.
 

 Under the authority of the claim and delivery of personal property statutes (Claim and Delivery Statutes) (Code Civ. Proc., §§511.010-516.050) and those providing for injunctions
 
 {id.,
 
 § 526 et seq.), along with the court’s inherent authority to administer the resolution of disputes, the court issued an order requiring Schectman to surrender originals and copies of documents removed from PM&S, and not previously delivered to the court, as well as any documents summarizing, quoting from, or otherwise recording information concerning the nature or contents of those documents. The order is a continuing one, requiring Schectman to turn over any documents coming into his possession unless received pursuant to a legitimate
 
 *1283
 
 discovery request or other court order. The court stated it would turn over the documents to counsel for PM&S and ordered PM&S to post a bond of $5,000. The court specifically noted its order did not constitute a determination of the merits of any discrimination claim brought by Schectman.
 

 In addition to filing a notice of appeal from the order granting the preliminary injunction, Schectman filed a petition for writ of mandate/ prohibition and request for stay which this court summarily denied on November 9, 1995.
 
 (Schectman
 
 v.
 
 Superior Court
 
 A071264 [nonpub. opn.].) The writ petition raised the same arguments we address in the present appeal. On November 12, 1996, Schectman filed a petition for stay of all litigation based on the document turnover order, including a hearing set for November 15, 1996, on an order to show cause why Schectman should not be held in contempt for violating the turnover order. We did not act on the stay request pending this decision, which renders it moot.
 

 I.
 

 In reviewing the court’s order, we begin by stating the well-settled rule that the decision to grant a preliminary injunction rests in the sound discretion of the trial court. A trial court will be found to have abused its discretion only when it has exceeded the bounds of reason or contravened the uncontradicted evidence. “Further, the burden rests with the party challenging the injunction to make a clear showing of an abuse of discretion.”
 
 (IT Corp.
 
 v.
 
 County of Imperial
 
 (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].) Trial courts generally evaluate two interrelated factors in deciding whether or not to issue a preliminary injunction: “The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued.”
 
 (Id.
 
 at pp. 69-70.)
 

 Schectman asserts the court’s preliminary injunction was issued sua sponte and without notice because such relief was not sought by PM&S. He is mistaken. Though the notice of hearing listed only a request for a statutory writ of possession, the pleadings clearly requested injunctive relief, and injunctive relief was discussed at the hearing. Schectman’s claim of lack of notice of the relief granted is disingenuous. He knew from the outset PM&S was seeking return of its documents. Also, Code of Civil Procedure section 512.070 provides for mandatory injunctive relief as a concomitant of a writ of possession, without requiring separate notice.
 

 PM&S asserts the appeal is moot because a reversal would be without practical effect. As previously mentioned, the trial court’s order is
 
 *1284
 
 based on three grounds. Although all were challenged in Schectman’s earlier writ petition, the present appeal reaches only one of the grounds—injunctive relief. Thus, PM&S urges that even if the preliminary injunction were reversed, such reversal would not invalidate the other grounds supporting the order. Schectman replies by relying on cases holding dismissal for mootness inappropriate if any material question remains to be determined. (See, e.g.,
 
 Hartke
 
 v.
 
 Abbott
 
 (1930) 106 Cal.App. 388 [289 P. 206];
 
 American Civil Liberties Union
 
 v.
 
 Board of Education
 
 (1961) 55 Cal.2d 167 [10 Cal.Rptr. 647, 359 P.2d 45].) In
 
 People
 
 v.
 
 Becker
 
 (1952) 108 Cal.App.2d 764 [239 P.2d 898, 239 P.2d 898], for example, the defendant school board director appealed from a judgment of conviction for misconduct in office and then resigned from the board to avoid embarrassing its members. The Attorney General moved to dismiss the appeal on the theory that reversal would not restore him to the office he had voluntarily relinquished. In rejecting this suggestion, the court criticized loose policies of dismissal; “The rather general and oft-repeated phrases that just because a judgment by the reviewing court may ‘prove ineffectual’ or that there is nothing ‘on which its judgment can operate’ travel in a circle. . . . [T]he true rule is that an appellant has a right to have settled on appeal whether there has been a ground of complaint against him and, what is more, that such a ground may not be deemed to be waived merely because a reversal of the judgment is ‘ineffectual’ to reinstate the original status quo.”
 
 (Id.
 
 at p. 768.)
 

 We agree dismissal for mootness is not appropriate; there are important issues presented by this case which require illumination.
 

 II.
 

 Turning to the merits of the appeal, Schectman claims the cases relied upon by PM&S and the court,
 
 Conn
 
 v.
 
 Superior Court
 
 (1987) 196 Cal.App.3d 774 [242 Cal.Rptr. 148] and
 
 In re IBP Confidential Business Documents Litig.
 
 (8th Cir. 1985) 754 F.2d 787, should be disregarded. Conn was the plaintiff in a wrongful termination action brought against his former employer Farmers Group. When Conn left Farmers, he took with him, without the knowledge or consent of Farmers, three boxes of documents (over 10,000 pages) which he claimed were his personal files. These included both in-house documents (notes, letters, memoranda and reports) and original communications to and from outside counsel relating to lawsuits against Farmers. In the course of the litigation, Farmers discovered Conn had the three boxes of documents in his possession. Farmers began efforts to have the documents returned. Ultimately, Farmers sought an order in the superior court to compel Conn and his counsel to surrender the documents. Conn asserted he needed the documents for preparation of the lawsuit
 
 *1285
 
 because Farmers had a “penchant for hiding documents during discovery in litigation in order to avoid disclosure of the truth . . .
 
 (Conn
 
 v.
 
 Superior Court, supra,
 
 196 Cal.App.3d at p. 779.) The trial court ordered Conn and his attorney to return substantially all of the documents taken, finding “ ‘[r]egardless of whether some of the documents may be ultimately discoverable, defendants have, and have always had, the right to keep their own documents until met with proper discovery requests or ordered to disclose them by the Court.’ ”
 
 (Id.
 
 at p. 781.)
 

 The Second District upheld the order requiring the return of the documents. It held the order was within the trial court’s “inherent power to control the proceedings before it and to make orders which prevent the frustration, abuse, or disregard of the court’s processes.”
 
 (Conn
 
 v.
 
 Superior Court, supra,
 
 196 Cal.App.3d 774, 785.) The appellate court also held the trial court did not err in ordering Conn and his attorney to turn over documents claimed to be privileged, observing that the attorney himself created the “privileged” documents by making notes on and about documents he had no right to have in the first place. The solution proposed by the petitioners, permitting them to retain the remaining “privileged” documents, was unacceptable because it would have allowed them to profit from their own wrongdoing.
 
 (Ibid.)
 

 In
 
 In re IBP Confidential Business Documents Litig., supra,
 
 754 F.2d 787, an IBP employee left his employer and took files he had generated as an employee, including financial statements, production and sales reports, customer data, marketing strategies, and pricing formulas. The former employee allowed government officials and others to examine the documents. IBP sued its former employee for injunctive relief for return of the documents. The Eighth Circuit directed entry of an order requiring the employee to return any such documents as were IBP’s property, finding the documents contained sensitive, confidential information about IBP’s internal operations and business strategies. The court noted IBP was essentially seeking the remedy of equitable replevin, which is available to compel the delivery of specific chattels wrongfully withheld where damages would be an inadequate redress for the injury.
 
 (Id.
 
 at p. 789.) Similarly, in this case one of the bases for relief was statutory replevin as provided by Code of Civil Procedure sections 511.010 through 516.050.
 

 PM&S cites two other cases condemning self-help evidence gathering. In
 
 Lipin
 
 v.
 
 Bender
 
 (1993) 193 A.D.2d 424 [597 N.Y.S.2d 340], a manager sued her former employer for alleged discrimination. During a court hearing the former manager surreptitiously read her employer’s counsel’s internal memoranda. The trial court dismissed the former manager’s complaint as a
 
 *1286
 
 sanction for her “highly improper” evidence-gathering.
 
 (Id.
 
 at p. 343.) In
 
 Furnish
 
 v.
 
 Merlo,
 
 128 Lab. Cas. (CCH) 157,755 (D.Or. Aug. 29, 1994), a manager in her final days of employment gathered confidential documents, including a corporate compensation list, personnel agreements, and a list of employee stock options. She then sued for discrimination and turned over her cache of documents to her counsel for use in the litigation. The former employee and her counsel sought to justify their conduct by stressing she made copies rather than taking originals and was permitted work-related access to the documents. The federal magistrate concluded the conduct of both client and counsel deserved sanction.
 

 Schectman contends “mere ownership” of the documents should not be a sufficient basis for ordering their return. He would have us disregard
 
 Conn
 
 and
 
 IBP
 
 in favor of cases governing trade secrets, conversion, and privilege. Schectman argues there should be no protection of documents not involving any personal privacy interest. He relies on “[t]he legion of cases” in the trade secret area where relief is denied to employers whose employees have taken documents that fail to rise to the level of trade secrets. For example, in
 
 American Paper & Packaging Products, Inc.
 
 v.
 
 Kirgan
 
 (1986) 183 Cal.App.3d 1318 [228 Cal.Rptr. 713], the court held that although customer lists could be protectible trade secrets, the plaintiff’s customer lists were not protectible since the information contained in them was generally known in the trade and already being used by good faith competitors. As discussed below, trade secret law protects an interest distinct from the documents themselves and does not apply here.
 

 Schectman relies on
 
 FMC Corp.
 
 v.
 
 Capital Cities/ABC, Inc.
 
 (7th Cir. 1990) 915 F.2d 300, a First Amendment case, where a television station obtained possession of originals and copies of a defense contractor’s documents. FMC brought an action for conversion and misappropriation of its business information resulting from the station’s refusal to return copies of the FMC documents. In reviewing these claims, the court applied California law. The court affirmed the dismissal of FMC’s misappropriation of confidential business information claim on the ground that confidential business information could be misappropriated only by a direct business competitor, since the thrust of the misappropriation tort is the pirating of the fruits of another’s labors and passing them off as one’s own. As to the conversion claim, the court noted the gravamen of the tort of conversion is the deprivation of the possession or use of one’s property. However, in response to the station’s First Amendment claims, the court stated the station was free “to retain copies of any of FMC’s documents in its possession (and to disseminate any information contained in them) in the name of the First Amendment.”
 
 {Id.
 
 at p. 305.) The court thus found a public policy exception to the general rules protecting property interests. No such exception is presented here.
 

 
 *1287
 
 Schectman also relies on
 
 Church of Scientology
 
 v.
 
 Armstrong
 
 (1991) 232 Cal.App.3d 1060 [283 Cal.Rptr. 917]. The church brought an action against its former member, Armstrong, alleging he converted to his own use confidential archive materials and disseminated them to unauthorized persons. Armstrong asserted the defense of justification, alleging he gave the documents to his attorney because he believed his life was threatened by the church. The trial court found Armstrong’s conduct was justified. The Court of Appeal affirmed, relying on sections of the Restatement Second of Torts, which allow a person to make intentional invasions of another’s interests when the actor reasonably believes such other person intends to cause a confinement or a harmful or offensive contact to the actor.
 
 {Id.
 
 p. 1072.) The evidence indicated church investigators shoved Armstrong, struck his elbow with a car, and attempted to run him off the road.
 
 {Id.
 
 at p. 1067.) No similar conduct, and thus no possibility of justification, appears in this case.
 

 Schectman has failed to cite any authority contrary to the foregoing cases condemning self-help evidence gathering by employees for use in contemplated litigation against their soon-to-be former employers. The facts here, involving the wrongful possession of confidential documents for use in anticipated litigation against PM&S, most closely resemble
 
 Furnish
 
 v.
 
 Merlo, supra,
 
 128 Lab. Cas. (CCH) f 57, 755. As such, they raise an issue distinctly within the court’s inherent authority to administer the resolution of disputes, and no policy exception to that authority is presented by this case. There is no underlying First Amendment issue, as was the case in
 
 FMC Corp.
 
 v.
 
 Capital Cities/ABC, Inc., supra,
 
 915 F.2d 300. Nor is there any justification based upon evidence of threats of physical harm, as in
 
 Church of Scientology
 
 v.
 
 Armstrong, supra,
 
 232 Cal.App.3d 1060.
 

 Schectman’s reliance on cases involving trade secrets is also misplaced. No one has claimed these documents are trade secrets. A trade secret is “information, including a formula, pattern, compilation, program, device, method, technique, or process, that: [^ (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [1 (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.” (Civ. Code, § 3426.1, subd. (d).) Thus, a trade secret may be embodied in documents, or other personal property, but has an intrinsic value which is based upon, or at least preserved by, being safeguarded from disclosure. The documents taken by Schectman, on the other hand, are not shown to have any intrinsic value to anyone other than their owner, except possibly by their use in a potential lawsuit, where such use would come squarely within the ambit of the Civil Discovery Act of 1986 (Stats. 1986, ch. 1334, § 2, p. 4700) (Discovery Act) and the Evidence Code.
 

 
 *1288
 
 It is undeniable the Discovery Act was intended to bring a new form of order to civil discovery and to eliminate some of the more undesirable elements of the adversarial system, including the “sporting theory of litigation—namely surprise at trial.”
 
 (Chronicle Pub. Co.
 
 v.
 
 Superior Court
 
 (1960) 54 Cal.2d 548, 561 [7 Cal.Rptr. 109, 354 P.2d 637].) Discovery simply tries to “take the ‘game’ element out of trial preparation while yet retaining the adversary nature of the trial itself.”
 
 (Greyhound Corp.
 
 v.
 
 Superior Court
 
 (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266].) In doing so, the Discovery Act as amended and interpreted has subsumed the entire field pertaining to the gathering of evidence in preparation for trial. The fact counsel still conduct much pretrial preparation and discovery without judicial assistance (see
 
 Bausé
 
 v.
 
 Anthony Pools, Inc.
 
 (1962) 205 Cal.App.2d 606 [23 Cal.Rptr. 265]) does not mean parties to litigation can operate outside the applicable parameters of the Discovery Act or may violate other laws or common law strictures in their zeal to pursue litigation.
 

 Schectman would have us disregard the very nature of modem discovery and distort the meaning of the concepts of trade secrets, conversion and privilege to suit his purposes. Discovery in the litigation context presupposes ownership of documents will remain with whomever holds title, while allowing access to the trier of fact, and litigants, in specifically delineated legal proceedings. As discussed above, trade secrets derive their value as a form of intellectual property from the fact they are not disclosed to those who might be able to use them to create value properly belonging to the owner of the secret. Privileges are grounded in public policy and do not, by their nature, create an ownership interest, but rather protect society’s interests and promote confidentiality within certain relationships. Justification is an exception rarely employed and designed to preserve life and limb. The potential litigant undertaking self-help in this case falls within none of these exceptions.
 

 Schectman’s assertion of an interest or justification superior to any interest grounded “solely on the basis of ownership” is not readily distinguished from a pickpocket’s interest in a stranger’s purse. Whether or not he might be able to articulate an end justifying the means he proposes—which is no less than to lay claim to documents which do not arguably “implicate any personal privacy interest”—he would still fail to state a sufficient reason to subvert society’s interest in preserving private property, as well as maintaining the jurisdiction of the courts to administer the orderly resolution of disputes. The trial court properly rejected these claims under the authority of the Claim and Delivery Statutes, which are based not only upon fundamental common law concepts of property ownership and conversion, but also upon a recognition of the court’s inherent authority to administer disputes over possession of chattels.
 

 
 *1289
 
 Accordingly, although it is enough to conclude there was no abuse of discretion in granting the injunction in this case, we will state clearly our agreement with those courts which have refused to permit “self-help” discovery which is otherwise violative of ownership or privacy interests and unjustified by any exception to the jurisdiction of the courts to administer the orderly resolution of disputes. Any litigant or potential litigant who converts, interdicts or otherwise purloins documents in the pursuit of litigation outside the legal process does so without the general protections afforded by the laws of discovery and risks being found to have violated protected rights. The least sanction cognizable in these circumstances would appear to be the one chosen by the trial court here: the return to the status quo existing at the time the documents were taken.
 

 Accordingly, we conclude Schectman has failed to show any abuse of discretion in the issuance of the preliminary injunction. The order is affirmed and the request for stay denied.
 

 Haerle, Acting P. J., and Ruvolo, J., concurred.
 

 A petition for a rehearing was denied July 15, 1997, and appellants’ petition for review by the Supreme Court was denied October 1, 1997.